Gerald W. **CHRISTOPHER**, Charles L. Prunty, and Billy G. Turner, Plaintiffs–Appellants,

v.

**MOBIL OIL CORPORATION**, Retirement Plan of Mobil Oil Corporation and Rex Adams, Defendants–Appellees.

No. 90–4562.

United States Court of Appeals, Fifth Circuit.

Jan. 24, 1992.

Rehearing Denied Feb. 24, 1992.

---

William E. Townsley, Townsley, Hanks & Townsley, Beaumont, Tex., Rodney R. Patula, Pamela J. Fair, Thomas L. Roberts, W. Randolph Barnhart, Pryor, Carney & Johnson, Englewood, Colo., for plaintiffs-appellants.

Michael E. Tigar, Austin, Tex., Gilbert I. Low, Organ, Bell & Tucker, Beaumont, Tex., Loren Kieve, DeBevoise & Plimpton, Washington, D.C., Johathan Richman, DeBevoise & Plimpton, New York City, for defendants-appellees.

Before HENLEY *, KING, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Appellants brought claims under the Age Discrimination in Employment Act (ADEA) and the Employee Retirement Income Security Act (ERISA), as well as various common-law claims including fraud, civil conspiracy, and breach of the employment contract, against their former employer Mobil Oil Corporation, based on Mobil's 1984 amendment of its employee benefit plan and alleged failure to disclose to appellants all of the options available under the amended plan. The district court granted Mobil's motion for summary judgment on the ADEA claims on the grounds that the claims were time-barred and that as a matter of law appellants were not constructively discharged in violation of ADEA. The district court also granted Mobil's request for judgment on the pleadings on appellants' state law claims on the ground that they were preempted by ERISA, and dismissed the ERISA claims on the ground that because appellants were not participants seeking to recover benefits from a retirement plan, the court lacked jurisdiction over their ERISA claims. We affirm in part and reverse and remand in part.

### Facts and Proceedings Below

The following facts are drawn from the parties' submissions of undisputed facts in connection with Mobil's motions for summary judgment, judgment on the pleadings, and dismissal.

Mobil provides retirement benefits for its employees through a defined benefit plan, under which employees receive a pension based on years of service, salary history, and life expectancy. Until 1977, the standard method of receiving these pensions was in the form of an annuity. In that year, however, Mobile added a lump sum option, enabling certain employees to receive the actuarial equivalent of their annuity, discounted at five percent, in one payment following retirement. To be eligible for the lump sum option, an employee had to have either an accrued lump sum pension benefit, or a net worth independent of the pension, equal to at least $250,000. Also, the employee was required to be at least fifty-five years old.

On July 2, 1984, Mobil announced changes to the lump sum option of the retirement plan, including (1) an increase in the discount rate from 5% to 9.5%, to operate prospectively, i.e., to be applied to all earnings after January 31, 1985; (2) an increase in the eligibility threshold from $250,000 to $450,000; and (3) a linking of the new threshold to the Consumer Price Index. These changes, which were announced as subject to Internal Revenue Service (IRS) approval, would apply to all employees retiring after January 31, 1985; thus, employees otherwise eligible to retire had a six-month window in which they could retire subject to the lower threshold and lower discount rate. The choice was a significant one for employees who met the $250,000 threshold but who were uncertain ever to meet the indexed $450,000 threshold because, with market interest rates well above 5%, the lump sum pensions were worth 40% more than the annuities. Appellants, Gerald Christopher, Charles Prunty, and Billy Turner, were among the approximately 1,100 Mobil employees who elected to take early retirement during the 6–month window. All three submitted their retirement notices between August and Oc-

---

* Circuit Judge of the Eighth Circuit, sitting by designation.

tober 1984, and retired as of January 1, 1985.

On July 16, 1984, Mobil sought a determination from the IRS that the plan as amended continued to meet the Internal Revenue Code's requirements for favorable tax treatment, including the requirement that pension plans not "discriminate in favor of highly compensated employees." 26 U.S.C. § 401(a)(4). In meetings in late September 1984, the IRS reviewing agent expressed concern that the amended plan could result in benefits favoring highly compensated employees, and indicated that he might need to seek technical advice from Washington. In response, Mobil adopted another plan amendment allowing Mobil, in its sole discretion, to waive the eligibility threshold in individual cases for valid cause shown. After insertion of this provision, the IRS issued to Mobil a favorable determination letter on November 23, 1984, noting that continued qualification of the plan would depend upon its effect in operation.

Mobil announced the IRS approval to its employees on December 21, 1984, but did not notify its employees of the waiver provision until well after expiration of the six-month window—October 1985. Because of a 1985 IRS revenue ruling and subsequent pronouncements, Mobil eventually entirely deleted the lump sum eligibility threshold in 1986.

Appellants filed age discrimination charges against Mobil with the Equal Employment Opportunity Commission (EEOC) on March 1, 1989. They alleged that Mobil's conduct in amending the plan and concealing the waiver provision was a concerted scheme to reduce its work force. By purporting to increase the lump sum threshold and concealing its awareness that applicable tax law precluded that action, appellants charged, Mobil induced hundreds of older employees into retirement without the need to pay them an early retirement bonus. The EEOC dismissed the charges as untimely filed. Appellants then commenced this suit on July 7, 1989. They alleged that Mobil's conduct constituted age discrimination in violation of ADEA,

29 U.S.C. §§ 621 et seq., as well as common-law fraud, civil conspiracy, unlawful interference with contract rights, breach of the employment contract, negligence, and gross negligence. In the event that appellants' state law claims were held to be preempted by ERISA, the complaint alleged in brief and conclusory fashion that Mobil's conduct violated ERISA, apparently ERISA § 510, 29 U.S.C. § 1140, prohibiting interference with an employee's attainment of a right under ERISA. For all claims, appellants sought the wages and employment benefits they would have received had they continued working until normal retirement age. On the ADEA claims, appellants also requested reinstatement.

Mobil moved for summary judgment on the ADEA and state law claims. The district court granted the motion, finding that the ADEA and state law claims were time-barred, that appellants had not been constructively discharged in violation of the ADEA, and that appellants' claims of discrimination arose from changes in fringe benefits available under a bona fide retirement plan, not from discrimination in nonfringe aspects of employment, and thus were not within the purview of the ADEA according to ADEA § 4(f)(2), 29 U.S.C. § 623(f)(2). Simultaneously, Mobil moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the state law claims on the ground that they were preempted by ERISA, and dismissal under Federal Rules of Civil Procedure 12(b)(1) & (6) of the contingent ERISA claim on the ground that appellants were not "participants" seeking to recover benefits under ERISA § 502, 29 U.S.C. § 1132, depriving the court of jurisdiction. The district court granted this motion as well.

### Discussion

I. ADEA Claims

 We first examine the district court's grant of summary judgment on the ADEA claims on the ground that they were time-barred. In reviewing a grant of summary judgment, all legitimate factual inferences presented by the record are drawn in

favor of the party opposing the motion. *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990) (per curiam). We can uphold the summary judgment only if our review demonstrates that no genuine issue of material fact remains and that the moving party is entitled to judgment as a matter of law. *Id.*

It is not disputed that the applicable statutes of limitations require an employee to file an age discrimination charge with the EEOC within 300 days after the alleged unlawful practice occurred, 29 U.S.C. § 626(d)(2), and to file a lawsuit within 3 years after the alleged unlawful practice occurred, 29 U.S.C. §§ 255(a), 626(e). Appellants argue, however, that a genuine issue of material fact exists as to when their awareness of the facts constituting the alleged age discrimination was sufficient to commence the running of the limitations period. *See Pruet Production Co. v. Ayles,* 784 F.2d 1275, 1279 (5th Cir.1986) ("[T]he statute does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with reasonably prudent regard for his rights." (quoting *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 930 (5th Cir.1975))). Specifically, they argue that Mobil's negotiation of a revised plan in October 1984 only came to light in 1988 when counsel for another former employee, Porter Mitchell (Mitchell), suing Mobil in federal district court in Colorado, discovered the correspondence between Mobil and the IRS. It was only when this fact became publicly known at the trial of *Mitchell v. Mobil Oil Corp.* in December 1988,[1] appellants argue, that they had any reason to know of Mobil's concealment of the waiver option. Appellants' EEOC filing in March 1989 and their commencement of this suit in July 1989 would both have been timely if the statute of limitations had commenced running in December 1988.

■ Evaluating the appellants' claim that the statute of limitations did not commence until December 1988 requires an analysis of the nature of their ADEA claim. The ADEA forbids an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A "discharge" within the meaning of this section may be constructive if a reasonable person in the employee's position would have felt compelled to resign under the circumstances. *Bodnar v. Synpol, Inc.,* 843 F.2d 190, 192 (5th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). An attractive early retirement offer, however, is not a constructive discharge merely because it creates a strong incentive to retire; an early retirement option can constitute a constructive discharge only if the employee shows that it sufficiently alters the status quo that each choice facing the employee makes him worse off. *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 467 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990); *Bodnar,* 843 F.2d at 193.

■ The gist of appellants' *prima facie* ADEA claim is as follows. The adoption of the 1984 plan amendment presented appellants with a choice between unfavorable options; they faced the choice of retiring within the six-month window or staying on at Mobil but possibly forgoing eligibility

---

1. The alleged fraud was not part of Mitchell's claims against Mobil. He argued, rather, that the plan amendment itself constituted a constructive discharge and was a willful violation of the ADEA. He also argued that Mobil had breached its fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, and had violated ERISA's anti-cutback provision, ERISA § 204(g), 29 U.S.C. § 1054(g), by retroactively limiting his right to the lump sum option, an accrued benefit. The jury found in favor of Mitchell on his ADEA claim and awarded him damages for back pay, front pay, and lost benefits. The district court held in favor of Mitchell on the ERISA claims as well, awarding him compensatory and liquidated damages. On appeal, the Tenth Circuit reversed, holding that Mitchell had failed to prove that Mobil's proffered justification for the plan amendment was a mere pretext for discrimination, and that Mitchell was not a participant with standing to assert ERISA claims. *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 471–74 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990).

for the lump sum payout. Either could be regarded as less favorable than staying on at Mobil until normal retirement age with the assurance of eligibility for the lump sum payout, which was the "status quo" when the amendment was adopted. The asserted discriminatory character of the amendment to the plan arises from the fact that only employees over the age of fifty-five were put to that choice. Employees under fifty-five did not presently qualify for retirement, so although the plan amendment may have defeated an expectation for them, they were not confronted with the possibility of losing a benefit for which they were then qualified. *See Mitchell,* 896 F.2d at 496.

This much of the ADEA theory was evident in July 1984 upon the initial announcement of the plan. The unfavorable choice to which it put "window" employees and its particular impact on employees over fifty-five were both apparent on the face of the plan amendment. Indeed, the theory outlined above was precisely Mitchell's claim against Mobil, accepted by the Tenth Circuit. Mitchell filed a complaint with the EEOC on April 25, 1985, with no knowledge of Mobil's alleged concealment of the waiver provision. Moreover, another employee, Frederic J. Raymond (Raymond), filed a similar charge with the Ohio Civil Rights Commission and the EEOC on May 10, 1985. Therefore, unless appellants can show that Mobil's alleged concealment adds a material element to their ADEA claim, the statute of limitations should have commenced running in July 1984.

Appellants have offered no theory under which the alleged nondisclosure is a necessary element. They refer us to the Fourth Circuit case of *Stone v. University of Maryland Medical System Corp.,* 855 F.2d 167 (4th Cir.1988), for their argument that "where, as here, the employee surrenders his job as a proximate result of fraud and deceit by the employer, the voluntariness of the retirement or resignation is fundamentally vitiated." *Stone* is one of a series of cases where resignations have been held to be involuntary based on an employer's misrepresentations about or nondisclosure of an employee's rights. Others include

*Covington v. Department of Health and Human Services,* 750 F.2d 937 (Fed.Cir. 1984), and *Scharf v. Department of the Air Force,* 710 F.2d 1572 (Fed.Cir.1983).

We do not believe that these cases avail appellants, however. As appellants' phrasing of their argument reflects, the effect of a showing of fraud in these cases is to render an otherwise voluntary choice involuntary. *Stone* and related cases involve disputes in which public employees were entitled to certain procedural protections if they were to be terminated involuntarily; they were required to show that their retirement was involuntary to invoke the jurisdiction of the Merit Systems Protection Board or to establish a "deprivation" under the due process clause. Here, by contrast, appellants allege a constructive discharge arising from the choice to which they were put by the plan amendment. To further argue that the actual election made was involuntary because it was based on incomplete information would be superfluous; involuntariness is implicit in appellants' argument that they were coerced into early retirement by the threatened removal of the lump sum option. Assuming, *arguendo* only, that appellants' allegations of nondisclosure would serve to estop Mobil from raising in defense the claim that appellants' retirement was voluntary, nevertheless the asserted nondisclosure does not form a material part of appellants' constructive discharge theory that would prevent the statute of limitations from commencing.

■ Appellants' arguments that this Court should apply equitable tolling or equitable estoppel fail for similar reasons. These doctrines provide for tolling of the statute of limitations when a plaintiff's unawareness of his ability to bring a claim—either unawareness of the facts necessary to support a discrimination charge or unawareness of his legal rights—is due to defendant's misconduct. *See Rhodes v. Guiberson Oil Tools Division,* 927 F.2d 876, 878–79 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991); *Kale v. Combined Insurance Co.,* 861 F.2d 746, 752 (1st Cir.1988). Here, the knowledge allegedly concealed from the employ-

ees was that they had a third option—to continue their employment and apply for a waiver from the higher lump sum requirement. Therefore, the facts as known to the employees in 1984 actually gave them a *better* ADEA claim than they would have had with full knowledge. Whatever non-disclosures Mobil is guilty of would not have lulled appellants into postponing assertion of their rights; if anything, it would have made them *more* likely to assert that they were constructively discharged.

Finally, appellants argue that although they knew in 1984 of the plan amendment and retirement window, they were misled into believing that they had no cause of action by Mobil's plausible justifications for its amendment of the plan, *i.e.*, that the threshold was changed to adjust for intervening inflation and that the discount rate was raised to align Mobil's practice with that of its competitors and to more realistically reflect current interest rates. In other words, appellants contend that although the discriminatory *effect* of the amendment was apparent in 1984, it was only upon learning of the concealment of the waiver option that they had reason to believe the plan amendment was actuated by age bias and that the alleged concerted scheme to reduce the work force began to take shape.

■ We find this argument unpersuasive as well. First, we fail to see how the deception alleged by appellants calls into question Mobil's proffered justifications for the plan amendment. The evidence does not create a genuine dispute as to the factual accuracy of Mobil's proffered justifications. Even if appellants' allegations are true respecting Mobil's having deceived its employees about the validity under applicable tax law of the plan amendment and about the waiver provision, there is no evidence showing that Mobil's announced reasons for the plan amendment were deceptive. This is an issue on which appellants would have had the burden at trial, and they were hence required to meet Mobil's summary judgment motion with summary judgment evidence that would sustain a

jury finding in their favor on the issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Blumberg v. HCA Management Co., Inc.,* 848 F.2d 642, 644 (5th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989).

■ In any event, a showing of deception as to motive supports equitable estoppel only if it conceals the very fact of discrimination; equitable estoppel is not warranted where an employee is aware of all of the facts constituting discriminatory treatment but lacks direct knowledge of the employer's subjective discriminatory purpose. Thus, where an employee was told that he was being discharged because industry economic downturn required reduction of the work force, and was told that he would be considered for re-hiring, we applied equitable estoppel to hold that limitations on his ADEA claim did not commence until he learned that he had been replaced by a younger employee. *Rhodes,* 927 F.2d at 880–82; *see also Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 595 (5th Cir.1981) (en banc) (employer's misrepresentation that employee would be reinstated induced foreseeable forbearance in filing ADEA claim); *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 (3d Cir.1983) (employer's explanation to employee that he was dismissed as part of a reorganization furnished grounds for equitable tolling in an ADEA suit until discharged employee learned that a younger replacement had been hired), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). By contrast, where an employee knew that he was discharged and replaced by a younger employee, his allegation that the company concealed from him the true reason for his discharge and that it was not until subsequent hirings that the "pattern of age discrimination" became evidence was held insufficient to support equitable estoppel. *Pruet Production Co.,* 784 F.2d at 1279–80; *accord Chapman v. Homco, Inc.,* 886 F.2d 756, 758 (5th Cir. 1989), *cert. denied,* 494 U.S. 1067, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990); *Blumberg,*

848 F.2d at 645.[2] The showing required for a *prima facie* employment discrimination claim is minimal, *see Pruet Production Co.,* 784 F.2d at 1279, and when "facts that would support a cause of action are or should be apparent," the statute commences even if the employee is not aware of *all* the evidence that he will ultimately rely upon at trial. *Blumberg,* 848 F.2d at 645 (emphasis added). The showing required at the stage of filing charges with the EEOC is even more lenient, because the purpose of the filing is only to initiate an EEOC investigation. *Pruet Production Co.,* 784 F.2d at 1279.

Applying those principles here, we conclude that whatever concealment Mobil may have been guilty of did not deceive appellants as to the facts of the alleged discrimination. Rather, appellants were able to evaluate the propriety of their alleged constructive discharge for ADEA purposes immediately. Just as in individual discharge cases the *prima facie* showing is only that the employee has been discharged and replaced by a younger worker, leaving exploration of an employer's motives for the EEOC investigation or pretrial discovery, here the appellants' *prima facie* case for constructive discharge was that older employees alone were put to the unfavorable choice of early retirement or loss of the lump sum option. This fact, apparent in July 1984, was sufficient to put appellants on notice of possible age discrimination (as it did other Mobil employees) and to require them to assert their rights.

For these reasons, even accepting for purposes of our review of the summary judgment appellants' charges of nondisclosure, we do not believe that a genuine issue of material fact exists as to when the statute of limitations on the ADEA claims commenced. Concluding that the district court's grant of summary judgment is supported on that ground, we do not reach the district court's further holding that as a

matter of law appellants were not constructively discharged in violation of the ADEA.

## II. ERISA Preemption of State Law Claims

We next address the district court's grant of judgment on the pleadings on appellants' state law claims. Appellants charged that Mobil's actions in amending the plan and withholding information about the waiver provision fraudulently induced them to surrender their jobs, were taken pursuant to a plan to reduce Mobil's work force, and breached the duty of good faith and fair dealing owed to appellants by Mobil under their employment contracts. This conduct, appellants alleged, gave rise to claims for fraud, civil conspiracy, breach of the employment contract, unlawful interference with contract rights, negligence, and gross negligence. The district court held these claims were preempted because they "relate to Mobil's Retirement Plan, which is governed by ERISA, and directly overlap with provisions of ERISA."

We turn to the first ground relied upon by the district court, namely that appellants' claims "relate to" an ERISA-governed retirement plan.

■ ERISA's provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). The Supreme Court has consistently emphasized the expansiveness of the "relate to" standard and its purpose of establishing the regulation of pension plans as an exclusively federal concern. *See, e.g., Ingersoll–Rand Co. v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990); *FMC Corp. v. Holliday,* —— U.S. ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2899–2901, 77 L.Ed.2d 490 (1983). The words "relate to" are to be

---

**2.** This view is consistent with this Circuit's rule in Title VII cases that the limitations period starts running when the plaintiff knows of the discriminatory *act,* not when the plaintiff perceives a discriminatory motive behind the act. *See Merrill v. Southern Methodist University,* 806 F.2d 600, 605 (5th Cir.1986).

given their "broad common-sense meaning," *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985), and a state law will be pre-empted "if it has a connection with or reference to such a plan." *Shaw,* 103 S.Ct. at 2900. This Circuit has held that the fact that a claim sought damages measured by pension benefits sufficed as the requisite "connection" to an employee benefit plan for preemption purposes. *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1294 (5th Cir.1989). *But see Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236, 247 (5th Cir.1990); *Pizlo v. Bethlehem Steel Corp.,* 884 F.2d 116, 120–21 (4th Cir.1989).

The complaints here focus on Mobil's amendment of an ERISA-governed employee benefit plan and Mobil's disclosure to its employees of the terms of the plan. In addition to calculating their damages by computing lost benefits under the plan, a court adjudicating appellants' claims of a fraudulent scheme to reduce the work force would have to examine, at a minimum, the operation of the plan prior to the amendment, the language of the plan amendments, and Mobil's communication to its employees about the terms of the plan amendments. Given the breadth of the section 514(a) test, we find that these connections are adequate to warrant preemption.

This conclusion is buttressed by decisions of this and other courts addressing claims of fraudulently induced retirement and wrongful termination, which are the crux of appellants' state law claims here. In the closely analogous case of *Lee v. E.I. DuPont de Nemours and Co.,* 894 F.2d 755 (5th Cir.1990), the plaintiffs alleged that they had retired in reliance on their employer's representations that the company was not preparing to adopt an early retirement incentive plan, and they sued their former employer for fraud and negligent misrepresentation in that respect. We held that the claims were preempted under section 514(a). *Id.* at 758; *see also Cefalu,* 871 F.2d at 1295 (breach-of-contract claim for oral misrepresentation that retirement

options offered equivalent benefits was preempted); *Degan v. Ford Motor Co.,* 869 F.2d 889, 895 (5th Cir.1989) (claim for breach of an oral agreement to pay early retirement benefits was preempted). In a case almost identical to the present one, the Third Circuit held that where employees alleged that an employer's notification of proposed plan amendments misrepresented to them that they would lose a retirement benefit if they did not retire in a window period before the amendments became applicable, their claims were preempted. *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 923 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991).

In addition, the Supreme Court recently spoke decisively to the question whether a tort claim premised on wrongful discharge to prevent vesting of pension benefits could survive independently of ERISA. In *Ingersoll-Rand Co. v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990), the Court found that the claim "related to" an ERISA-covered plan under section 514(a). Appellants here seek to distinguish their "wrongful discharge by fraud" claim from the tort claim at issue in *McClendon.* They argue that whereas the existence of a pension plan is a necessary *element* of the cause of action considered in *McClendon* (discharge to prevent vesting of pension benefits), here the pension plan was merely the *subject* of Mobil's fraud. The fraud claim itself, they argue, is conceptually identical to a fraud claim concerning any other subject matter, and ERISA cannot generally preempt state laws prohibiting employers from fraudulently inducing employees to give up their jobs. Appellants rely on *Mackey v. Lanier Collections Agency and Service,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), in which the Court noted that lawsuits based on "run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" are not preempted merely because the suits are brought against an ERISA plan. *Id.* 108 S.Ct. at 2187.

We do not find this argument persuasive. We have previously noted that preempted

state law includes any state law cause of action as it relates to an employee benefit plan, even if it arises under a general law which in and of itself has no connection to employee benefit plans. *Cefalu,* 871 F.2d at 1292 n. 5. Although there would undoubtedly be cases of fraudulently induced retirement that were not preempted, the specific conduct here, as in *Lee, Cefalu,* and *Degan,* relates directly to the operation of an ERISA plan. Superimposing state law fraud standards on the elaborate ERISA provisions governing the content and timing of notice of plan provisions and amendments, *see* ERISA §§ 102, 104(b)(1), 29 U.S.C. §§ 1022, 1024(b), would undercut the goal of uniform national regulation in the manner that section 514(a) seeks to prevent. *See Memorial Hospital System,* 904 F.2d at 245 (observing that preemption is proper where the state law claims address areas of exclusive federal concern, and where they directly affect the relationship among the traditional ERISA entities). In our view, this makes the conduct at issue here a far cry from the "run-of-the-mill" claims alluded to in *Mackey.*[3]

For the same reason, appellants' reliance on *Hartle v. Packard Electric,* 877 F.2d 354 (5th Cir.1989) (per curiam) is misplaced. In *Hartle,* a discharged employee brought suit for wrongful termination and civil conspiracy to unlawfully terminate his employment. Because the general rule in Mississippi was employment at will, he argued that his participation in an employee benefit plan had removed his employment from employment-at-will status and had effectively given him a tenured position. However, because the employer's complained-of conduct did not pertain to the operation of an ERISA plan, we observed that Hartle's claim did "not in any manner implicate the federal regulation of employee benefit plans" and held that preemption was not proper. *Id.* at 356. Here, the employer's conduct *does* relate to the pension plan, and

federal regulation of retirement plans is implicated to a much greater degree.

Finally, appellants argue that even if their state law claims are preempted to the extent that the damages sought are deemed to be "benefits," the preemption would not bar the claims in their entirety, and that the claims for lost wages, exemplary damages, and the like, would survive as state law claims. They rely on several cases finding partial preemption only. One is *Krause v. Dresser Industries, Inc.,* 910 F.2d 674 (10th Cir.1990), in which a terminated employee filed claims under the ADEA and for breach of an implied contract for tenured job security. The district court entered summary judgment for the defendant on the breach-of-contract claim insofar as it sought lost pension, health insurance, or life insurance benefits, on the grounds of ERISA preemption. The Tenth Circuit upheld a verdict for the plaintiff on the claim for lost salary, however, stating, "We are at a loss to see how a breach of contract claim solely for lost salary is at all related to an employee benefit plan," and holding that there was no preemption of that claim. *Id.* at 680 (citing *Hartle, supra* ). Likewise, in *Sorosky v. Burroughs Corp.,* 826 F.2d 794 (9th Cir.1987), the Ninth Circuit held that an employee's claim of breach of contract and wrongful discharge in part relied on theories independent of the benefit plan and thus was not entirely preempted. *Id.* at 800. Finally, appellants cite *Clark v. Coats & Clark, Inc.,* 865 F.2d 1237, 1245 (11th Cir.1989), for the proposition that the same set of operative facts can give rise to both preempted and unpreempted causes of action.

We conclude that this type of partial preemption is inappropriate in the present case, however. Unlike *Krause,* this case is not one where the main nexus

---

**3.** Appellants also cite *Greenblatt v. Budd Co.,* 666 F.Supp. 735 (E.D.Pa.1987), which does provide more direct support for their argument than the fact that the *subject* of the alleged fraud is pension benefits is incidental and does not warrant preemption. *See id.* at 742. However, we agree with the Seventh Circuit that *Green-*

*blatt* is not consistent with our Circuit's holding in *Cefalu. See Lister v. Stark,* 890 F.2d 941, 945 n. 10 (7th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990). Therefore, we, like the Seventh Circuit, decline to follow *Greenblatt. See id.* at 945.

to an employee benefit plan is only the calculation of damages. Once stripped of its link to the pension plan provided by the measure of damages, the *Krause* plaintiff's claim survived as a suit for lost salary based upon breach of an implied contract of continued employment. Here, by contrast, the basis of the claims themselves is the operation of the pension plan; if appellants' claims were stripped of their link to the pension plans, they would cease to exist. The *Sorosky* and *Clark* courts employed a similar analysis which would support complete preemption in the present case. In *Sorosky*, the court held that Sorosky's claim that Burroughs agreed to provide him with monthly retirement benefits and then sought to prevent him from acquiring those benefits was preempted; it was only breach-of-contract or wrongful discharge theories "that have no relationship to the benefit plan" that survived as independent state law claims. *Sorosky*, 826 F.2d at 800. The *Clark* court confronted an employee's claim that his termination, in addition to being effected for the purpose of interfering with his attainment of pension benefits in violation of ERISA § 510, 29 U.S.C. § 1140, was carried out in a malicious manner that inflicted severe emotional distress upon him. The court held that the tort claim, though it "allude[d] to conduct which was proximate (or even concurrent) in *time* to the alleged ERISA violation," was "wholly remote in *content*"; the employee had "not alleged any conduct on the part of Coats & Clark which relates to the processing of any ERISA covered benefit or claim." *Clark*, 865 F.2d at 1243. However, *Clark* carefully distinguished the employee's claim there from a claim that a refusal to pay pension benefits was itself so outrageous as to amount to intentional infliction of emotional distress, which the court had found to be preempted in *Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir.1987).

Because the underlying conduct at issue here cannot be divorced from its connection to the employee benefit plan, we uphold the district court's judgment that the state law claims are preempted in their entirety.

## III. ERISA Standing

ERISA grants standing to a "participant" to bring a civil action to enforce his rights under the terms of a plan or to enforce the provisions of ERISA. ERISA § 502, 29 U.S.C. § 1132. The district court granted Mobil's motion to dismiss appellants' ERISA claims on the ground that appellants were not "participants" within the meaning of that section and therefore were not empowered to sue. *See Nugent v. Jesuit High School of New Orleans*, 625 F.2d 1285, 1286 & n. 3 (5th Cir.1980).

ERISA defines the term "participant" to include "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." ERISA § 3(7), 29 U.S.C. § 1002(7). The Supreme Court recently addressed the meaning of the "former employee" component of that definition. In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Court observed that the definition referred to "former employees who 'have ... a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." *Id.* 109 S.Ct. at 958 (quoting *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir.) (per curiam), *cert. denied*, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986)). The Court also construed the "may become eligible" language of section 3(7) to mean that "a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id.*

Mobil argues that appellants do not have standing because they have neither a colorable claim for vested benefits nor a reasonable expectation of returning to covered employment. In Mitchell's suit against Mobil, the Tenth Circuit denied ERISA standing to the plaintiffs on the ground here urged by Mobil. *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 474 (10th Cir.), *cert. denied*, ── U.S. ──, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990).

The first part of this conclusion finds support in the decisions of this Circuit. We have held that where, as here, retired em-

ployees received in a lump sum benefits that were concededly all to which they were entitled under a plan as it existed at their retirement, their claim is for damages, not vested benefits. *Yancy v. American Petrofina, Inc.*, 768 F.2d 707, 708–09 (5th Cir.1985) (per curiam); *Joseph v. New Orleans Electrical Pension & Retirement Plan*, 754 F.2d 628, 630 (5th Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985); *accord Kuntz*, 785 F.2d at 1411. In *Yancy*, the employer announced its intention to modify the interest rate factor used to calculate lump sum retirement benefits, but gave employees approximately three months in which to retire under the older, more generous discount rate. We denied standing to an employee who took early retirement during the three months, received his lump sum payment, then sued alleging that the amendment of the plan violated fiduciary duties imposed by ERISA. We held that, lacking a claim for vested benefits, he could not be deemed a plan "participant." *Yancy*, 768 F.2d at 709.

For the second part of its conclusion—that the plaintiff lacked a reasonable expectation of returning to covered employment—the *Mitchell* court relied on the fact that the plaintiff had not sought reinstatement. *Mitchell*, 896 F.2d at 474; *see also Berger v. Edgewater Steel Co.*, 911 F.2d 911, 922 (3d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); *Kuntz*, 785 F.2d at 1411. In the present case, the only request for reinstatement in appellants' original complaint is in the ADEA claim, which we have held to be barred by the statute of limitations. *See* section I, *supra*. However, this request does indicate that appellants do desire court-ordered reinstatement.

We are not convinced that *Firestone* can be read to reduce the standing question to a straightforward formula applicable in all cases. This seems particularly so in cases

involving allegations of discharge. ERISA § 510, 29 U.S.C. § 1140, makes it unlawful for an employer to "discharge, fine, suspend, expel, discipline, or discriminate against a participant" for exercising a right provided by ERISA or "for the purpose of interfering with the attainment" of a right provided by ERISA. The Supreme Court's recent *McClendon* decision held that this provision would foreclose the development of any state law cause of action for wrongful termination to prevent vesting of pension benefits. *Ingersoll–Rand Co. v. McClendon*, — U.S. —, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990). The implication of the Court's holding that the discharged employee must look solely to ERISA for his remedy is that he would have standing to do so. Nevertheless, it is not readily apparent that he would have standing under the construction of *Firestone* urged by Mobil; he would be a former employee lacking both a claim for vested benefits and (unless he requested reinstatement) a reasonable expectation of returning to covered employment. It would be unusual if in that situation his ability to assert a claim at all turned on whether or not his requested relief included reinstatement; it would seem more logical to say that but for the employer's conduct alleged to be in violation of ERISA, the employee *would* be a current employee with a reasonable expectation of receiving benefits, and the employer should not be able through its own malfeasance to defeat the employee's standing. *Cf. Amalgamated Clothing and Textile Workers v. Murdock*, 861 F.2d 1406, 1418 (9th Cir.1988) ("It would be ironic if the very acts of benefit payment and plan termination that allegedly resulted in a fiduciary personally obtaining ill-gotten profits should also serve to deny plan beneficiaries standing ... to redress the fiduciaries' alleged breach of the duty of loyalty.").[4]

---

4. We do not mean to imply that an employee's entitlement to certain *remedies* might not turn on whether or not he was willing to return to work. If, for example, he claimed entitlement to the fully vested pension as damages, it might be perfectly reasonable to require that he return to work at least for the additional length of time required for the pension to vest. However, a wrongful discharge might give rise to other damages as well, for which reinstatement would not seem to be a logical prerequisite.

▮ Therefore, recognizing that we are anchored at one end by *Yancy*, we also believe that *Yancy* does not extend so far as to encompass situations such as the one at issue in *McClendon*. The question then becomes where on that axis the present case falls. A few pertinent distinctions between the two cases bear emphasis. *Yancy's* position as a retired employee who had received lump sum benefits was largely of his own making. He was informed of the plan amendment and of the effects of each option open to him. Our holding in the case amounts to a decision that he could not both accept the offered inducement for early retirement and then later complain of the choice to which he had been put; if he felt that he was entitled to continue to work and then retire at the time of his choice with a lump sum calculated at the old rate, he was obligated to act consistently with his desired relief by remaining a covered employee and challenging the plan amendment. The violation he alleged—an amendment of the retirement plan that amounted to a breach of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109—was not one that in and of itself divested aggrieved parties of their status as covered employees able to sue. McClendon, on the other hand, had no such choice. A discharge to prevent vesting of benefits in violation of section 510 by definition must be challenged by someone other than a current employee or someone with a claim to vested benefits. Thus, the standing question and the merits of an employee's claim are unavoidably intertwined to some degree; whether a plaintiff has standing to assert ERISA rights may depend upon whether he can establish a discharge or some other conduct in violation of ERISA, but for which he would have standing. *See Amalgamated Clothing*, 861 F.2d at 1410.

The Third Circuit alluded to this problem in its recent *Berger* decision. There, Edgewater Steel amended its retirement plan to eliminate two benefits: a lump sum payment in place of the first three months of pension benefits, and a supplemental payment given as an early retirement benefit to employees whose retirement was in the mutual interests of the company and the retiree and was approved by the company. Upon announcement of these changes, Berger and the other plaintiffs chose to retire before the amendments became effective. They each received the three-month lump sum provided automatically to all retirees, but none were approved for the supplemental payment. Among the plaintiffs' allegations were a charge that the elimination of the three-month lump sum amounted to the elimination of an accrued benefit in violation of ERISA § 204(g), 29 U.S.C. § 1054(g), and a charge that the amendment constituted an intentional interference with their right to both benefits, in violation of ERISA § 510, 29 U.S.C. § 1140. The court, citing *Kuntz* and *Yancy*, held that the plaintiffs did not have standing to assert their section 204(g) claim because they had retired and accepted the benefits in a lump sum, and had not asked for reinstatement. *Berger*, 911 F.2d at 921–22. However, the court noted the contingency of this conclusion on the denial of the plaintiffs' section 510 claim. *Id.* at 922. It stated: "Of course, we recognize that if the Employees were constructively discharged as they do claim, they would not necessarily have to return to work in order to have standing to claim a make whole remedy." *Id.*[5]

---

5. A Third Circuit decision in a pre-*Firestone* case provides an even more direct illustration of the contingency of standing on the nature of the ERISA violation alleged. In *Saporito v. Combustion Engineering Inc.*, 843 F.2d 666 (3d Cir. 1988), *vacated,* 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989), the plaintiffs claimed that they had been *induced to retire* under one retirement plan while the employer concealed the development of a second plan with more favorable terms. The court held that they did not have standing as participants in the first plan to sue for breach of fiduciary duties because they had retired and received all of the benefits to which they were entitled in a lump sum. *Id.* at 671. However, the court did hold that they had standing as participants in the *second* plan to argue that they had been tricked into retiring in violation of section 510, because they alleged that "but for the selective divulgence of information, they would have been members of [the second plan], and, for the purposes of standing to bring an action under ERISA, should be considered as such." *Id.* at

On the record before us, we cannot say where on the spectrum between *Yancy* and *McClendon* this case falls. Because appellants pleaded their ERISA claims only as contingent on preemption of their state law claims, and because the district court did not rule on the merits of the ERISA claims, appellants have not fleshed out their ERISA claims and theories, or even identified with precision which sections of ERISA they claim were violated. However, their allegations do at least suggest an assertion that they were constructively discharged in violation of section 510 and that but for Mobil's nondisclosure they would be covered employees with standing to challenge the plan amendment. They allege deceptive conduct by Mobil that might be found to vitiate the voluntariness of their decision to retire and that might distinguish the present case from both *Yancy* and *Mitchell.* Appellants also sought reinstatement in their ADEA action, and did not affirmatively indicate that reinstatement was not sought under their ERISA claims. For these reasons, we cannot now foreclose the possibility that they could prove facts that would create standing for them, and we believe that the trial court's dismissal on the pleadings of the ERISA claims was premature. Of course, appellants can, and doubtless should, be required to plead their ERISA claims with greater specificity.

We emphasize that we have not determined that appellants will be able to establish a violation of section 510, only that they should be allowed to attempt to do so. We reverse the trial court's dismissal of appellants' ERISA claims and remand for further proceedings consistent with this opinion.

### Conclusion

For the reasons stated above, we affirm the district court's grant of summary judgment to Mobil on the ADEA claims and its grant of judgment on the pleadings for Mobil on all of appellants' state law claims. However, we reverse and remand the district court's dismissal of appellants' ERISA claims.

AFFIRMED In Part; REVERSED And REMANDED In Part.

---

672; *see also id.* at 672 n. 7 (distinguishing *Stanton v. Gulf Oil Corp.,* 792 F.2d 432 (4th Cir.1986), in which the plaintiff urged "but for" participant standing, but his claim was rejected because the events precluding standing were under his control). *Saporito* was vacated and remanded by the Supreme Court for further consideration in light of *Firestone,* 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989).