UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-31458
SUMMARY CALENDAR
_____

R. L. MONTGOMERY, III; SHIRLEY LEGER MONTGOMERY,

Plaintiffs - Appellants

v.

STATE OF LOUISIANA, on behalf of Louisiana Department of Public Safety & Corrections; W.
R. WHITTINGTON, Individually and in his official capacity,

Defendants - Appellees.

On Appeal from the United States District Court for the
Western District of Louisiana, Lafayette
(00-CV-1497)

August 2, 2002

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]

In this appeal, we review a district court's summary-judgment dismissal of Plaintiff R.L.

Montgomery, III,'s 42 U.S.C. § 1983 civil rights action against Defendant W.R. Whittington in

his individual capacity. For the following reasons, we affirm the district court's judgment.

_____

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

-1-

I

At all times relevant to this matter, Montgomery was a Major in the Louisiana State Police, and Whittington was Superintendent. Montgomery alleges that Whittington conducted a two-year campaign of harassment, humiliation, and intimidation in an effort to drive Montgomery into retirement. According to Montgomery, the harassment began on April 21, 1997, when he became the target of a grand jury investigation into the actions of his subordinate, Kenneth Delcambre. Montgomery alleges that Whittington placed him on a forced leave of absence, during which Whittington gave him an unsatisfactory service rating. Furthermore, Montgomery alleges that Whittington caused newspapers to publish stories regarding the criminal investigation, and caused the criminal prosecution to continue unabated after the grand jury had refused to indict Montgomery.

In July of 1997, Montgomery went on sick leave, claiming that Whittington's campaign of harassment had caused his health problems. On September 8, 1997, Whittington ordered Montgomery's supervisor and friend, Lieutenant Colonel Kenneth Norris, to go to Montgomery's home and ask him to surrender his service sidearm, his badge, and all other items in his possession issued by the Louisiana State Police. On September 22, 1997, Whittington issued Montgomery a second unsatisfactory service rating, despite the fact that Montgomery had been out on sick leave since July. Montgomery remained on leave and never returned to work. He retired on August 2, 1999.

In addition to these specific acts, Montgomery also alleges that Whittington ordered Norris to keep official contacts with Montgomery, in person and by mail or telephone, after September 8, 1997. He argues that such contacts served no administrative purpose. Rather, they

were meant solely to harass him.

On May 16, 2000, Montgomery and his wife filed suit in Louisiana state court against the State of Louisiana through the Louisiana Department of Public Safety and Corrections and against Whittington, individually and in his official capacity as Superintendent of the Louisiana State Police. In addition to various state law tort claims, the plaintiffs alleged civil rights claims under 42 U.S.C. § 1983, arguing that Whittington had violated Montgomery's Fifth and Fourteenth Amendment rights by forcing him to leave his tenured employment with the Louisiana State Police. The defendants removed the case to the Western District of Louisiana. The State of Louisiana, as well as Whittington in his official capacity, filed an unopposed Fed. R. Civ. P. 12(b)(6) motion to dismiss the civil rights claims for failure to state a claim. The district court granted the defendants' 12(b)(6) motion. The defendants later moved for summary judgment on the remaining claims, arguing that Whittington's actions did not implicate a constitutional right, that Whittington was entitled to qualified immunity, and that the state law claims were prescribed and lacked merit. The district court denied summary judgment with respect to the plaintiffs' civil rights claims but granted it with respect to the state law claims.

The defendants then filed a second motion for summary judgement on the remaining civil rights claims, this time arguing that they were barred by Louisiana's one-year prescription period. The district court concluded that, because the latest date upon which the one-year prescription period could have commended was in 1997, the civil rights claims were prescribed. The district court granted the defendants' second motion for summary judgment. The plaintiffs appeal.

II

We review a grant of summary judgment de novo, applying the same standard as the

-3-

district court. See Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co., 290 F.3d 303, 310 (5th Cir. 2002). Summary judgment is properly granted only if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. Pro. 56(c). If the moving party meets its initial burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence establishing a factual issue. See Evans v. Houston, 246 F.3d 344, 348 (5th Cir. 2001). In deciding whether there is a genuine issue of material fact, all inferences to be drawn from the evidence must be drawn in favor of the nonmoving party. See Terrebonne, 290 F.3d at 310. Although we draw all reasonable inferences in favor of the nonmoving party, conclusory allegations unsupported by concrete and particular facts are insufficient to defeat a motion for summary judgment. See Hugh Symons Group, PLC v. Motorola, Inc., 292 F.3d 466, 468 (5th Cir. 2002); Marshall v. East Carroll Parish Hosp. Serv. Dist., 134 F.3d 319, 324 (5th Cir. 1998).

Montgomery argues that the district court incorrectly held that Louisiana's one-year prescription period barred his federal claims against Whittington in his individual capacity. Because claims made under § 1983 are not subject to a specific federal statute of limitations, we borrow the forum state's general personal injury limitations period. See Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir.), cert. denied 122 S.Ct. 53 (2001). In Louisiana, the period is one year. See La. Civ. Code art. 3492; Elzy v. Roberson, 868 F.2d 793, 794–95 (5th Cir. 1989).

Although state law governs the prescription period of a § 1983 action, federal law determines the time at which the action accrues. See Piotrowski, 237 F.3d at 576. Federal law dictates that the statute of limitations begins to run "the moment the plaintiff becomes aware that

-4-

he has suffered an injury or has sufficient information to know that he has been injured." Id. (quoting Helton v. Clements, 832 F.2d 332, 335 (5th Cir. 1987)). A plaintiff's awareness consists of two elements: (1) the existence of an injury; and (2) a causal connection between the injury and the defendant's conduct. See id. The plaintiff need not know that he has a cause of action; he need only know the facts that would ultimately support the cause of action. See id. The continuing violation theory can relieve a plaintiff of showing that all of the defendant's conduct occurred within the prescription period, but only if the plaintiff can show "a series of related acts, one or more of which falls within the limitations period." Messer v. Meno, 130 F.3d 130, 134–135 (5th Cir. 1997).

Montgomery alleges that his wrongful discharge was constructive, and to prove a constructive discharge, he must establish that his working conditions were so intolerable that any reasonable employee in his position would feel compelled to resign. See Webb v. Cardiothoracic Surgery Assocs., P.A., 139 F.3d 532, 539 (5th Cir. 1998). While this Court has never defined the precise moment at which a cause of action for constructive discharge accrues, we have applied prescription concepts to constructive discharge actions on at least two occasions. See generally Christopher v. Mobil Oil Corp., 950 F.2d 1209 (5th Cir. 1992) (concluding that a constructive discharge under the Age Discrimination in Employment Act was time-barred); Kline v. N. Tex. State Univ., 782 F.2d 1229, 1234 (5th Cir. 1986) (determining that a substantial part of a § 1983 constructive discharge action to be time-barred).

In Christopher, three plaintiffs who had elected to take early retirement from Mobile Oil brought a claim for constructive discharge under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq. Under the ADEA, an early retirement option can constitute a

constructive discharge if the employee can show that it sufficiently altered her status quo so that each available choice available would have made her worse off. See  Christopher, 950 F.2d at 1214.  We found that the plaintiffs were aware of all the facts that would support an action for constructive discharge —that is, they were presented with an early retirement option that would leave them worse off whichever option they chose—when Mobil announced the changes to its retirement plan in July of 1984. See id. at 1215.  Accordingly, we held that the statute of limitations began running in July of 1984, not when the plaintiffs actually retired. See id.  Although Christopher applied prescription concepts to a constructive discharge action under the ADEA, we see no reason to treat a constructive discharge action under § 1983 any differently.

Kline, on the other hand, did involve a § 1983 constructive discharge action. Like Montgomery, the plaintiff in Kline alleged a campaign of harassment designed to force him to resign from tenured employment. See Kline, 782 F.2d at 1230.  We found that Kline's last day of actual employment was on a date outside the relevant statute of limitations. See id. at 1233.  Nonetheless, we also noted that there was a factual dispute as to when Kline knew or had reason to know of the injury because he had taken a leave of absence with a reasonable expectation of returning. See id. Although we declined to resolve the factual conflict, we noted that the statute of limitations should have begun running on the date that Kline knew that he would not resume his employment at the end of his leave. See id. at 1233 n.6.  At the very least, Christopher and Kline instruct us that the date upon which one's cause of action for constructive discharge accrues is not necessarily the date of one's official resignation.  Thus, Montgomery's argument that his cause of action accrued on August 2, 1999, simply because he officially resigned on that date is without legal support.

Having established the law on prescription and constructive discharge in this jurisdiction,

we now turn to Montgomery's allegations. Montgomery brought this § 1983 claim against Whittington for constructive discharge on May 16, 2000. Under the controlling Louisiana prescriptive period, Montgomery's claim would be time-barred if his cause of action had accrued before May 16, 1999. Thus, the critical issues become: (1) whether, before May 16, 1999, a reasonable employee in Montgomery's position would have felt compelled to resign; and (2) if so, whether Whittington performed a series of related acts, one or more of which occurring on or after May 16, 1999.

We agree with the district court that Montgomery was aware, or should have been aware, of the critical facts necessary to sustain an action for wrongful discharge before May 16, 1999. In opposition to Whittington's motion for summary judgment, Montgomery proffers evidence of a string of specific acts of harassment that ended with the surrender of his sidearm and badge on September 8, 1997. Further, Whittington offered excerpts from Montgomery's deposition testimony wherein Montgomery stated that he had no contacts with Whittington for approximately two years prior to his resignation. Whittington thus met his initial burden of showing that there was no genuine issue of material fact with respect to the timing of Montgomery's § 1983 claims, and the burden shifted to Montgomery to produce evidence establishing a factual dispute. See Evans, 246 F.3d at 348.

The only evidence Montgomery presented to establish acts of harassment beyond September 8, 1997, is an affidavit from Norris stating that he had further contacts with Montgomery, both in person and by mail or telephone, pursuant to Whittington's orders. Norris believed that these contacts and communications served no worthwhile administrative purpose and that they were intended to harass Montgomery. The affidavit is non-specific and does not

provide dates for these alleged contacts. It is therefore insufficient to defeat Whittington's motion for summary judgment, as "[m]ere conclusory allegations are not competent summary judgment evidence and are insufficient to overcome a summary judgment motion." Hugh Symons Group, 292 F.3d at 468; Marshall, 134 F.3d at 324. Because Montgomery cannot provide competent evidence of harassment after September 8, 1997, he possessed all the critical facts necessary to bring his cause of action on or before that date, over a year outside Louisiana's prescription period.

Montgomery also relies on Norris's affidavit to support his theory of a continuing violation. Because the affidavit is not competent summary judgment evidence, we find that Montgomery has failed to allege a series of related acts supporting his continuing violation argument.

III

Montgomery has failed to allege facts from which a reasonable trier of fact could conclude that a reasonable employee in Montgomery's position would have, on or after May 16, 1999, felt compelled to resign from the Louisiana State. He has also failed to allege specific facts from which a reasonable trier of fact could conclude that Whittington had performed a series of related acts of harassment, at least one of which occurred after May 16, 1999. Accordingly, Montgomery's § 1983 claim is time-barred, Whittington is entitled to a judgment as a matter of law, and the judgment of the district court is AFFIRMED.