989 F.2d 652
 61 USLW 2589, 16 Employee Benefits Cas. 1843
 Joan A. SHAWLEY, William J. Calaboyias, James C. Vogel, and
Paul Percherke, on behalf of themselves and other
persons similarly situated,
v.
BETHLEHEM STEEL CORPORATION
Joan A. Shawley, William J. Calaboyias, James C. Vogel, and
Paul Percherke, Appellants.
 No. 92-3149.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 16, 1992.
Decided March 19, 1993.
As Amended April 23, 1993.
Sur Petition for Rehearing April 23, 1993.
 
 David I. Goldman (argued), United Steelworkers of America, Pittsburgh, PA, William T. Payne, Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, CA, for appellants.
 G. Daniel Carney (argued), Thorp, Reed & Armstrong, Pittsburgh, PA, for appellee.
 Before: STAPLETON, SCIRICA and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 Plaintiffs appeal an order of the district court granting defendant Bethlehem Steel Corporation's motion to dismiss plaintiffs' claim under § 510 of the Employment Retirement Income Security Act, 29 U.S.C. § 1140 (1992). The district court, 784 F.2d 1200, found that plaintiffs were not "participants" in defendant's pension plan and, therefore, had no standing to sue under ERISA. We will affirm.
 
 I.
 A.
 
 2
 Plaintiffs were employees in the Bethlehem Steel's freight-car division during the nineteen-seventies. After working from five to seven years, plaintiffs were laid off in 1979 and 1980 because of a downturn in the domestic steel industry. During their employment, plaintiffs earned service credit under a company pension plan.[1] Bethlehem Steel maintains the Plan pursuant to a collective bargaining agreement with the United Steelworkers of America.
 
 
 3
 Under the Plan, an employee earns credit toward a pension based on his number of years of continuous service. Plan, p 2.1. Ten years of continuous service vests an employee with a pension. Id. When an employee stops accruing credit toward a pension,[2] he or she suffers a "break" in continuous service. If the employee is rehired after the break, the credited service does not count toward a pension unless the break is "removed." Plan, p 5.1. A break in service is removed[3] if (a) on the date of rehire, the employee's credited service is longer than the period of layoff, and (b) the employee works for one year after rehire. Plan, p 5.1(c).
 
 
 4
 In 1987, Bethlehem Steel's freight-car division experienced an upsurge in business, and the company decided to hire hundreds of workers. At the time of hiring, plaintiffs' years of credited service exceeded the duration of their layoff. Therefore, under the Plan, plaintiffs' breaks in service would have been removed if they had been rehired in 1987, and their pension benefits would have vested sooner than the benefits of a new employee.
 
 
 5
 Plaintiffs applied for, and were qualified for,[4] positions at Bethlehem Steel. Bethlehem Steel had no obligation to rehire plaintiffs under the collective bargaining agreement because plaintiffs' recall rights expired after five years of layoff. Plaintiffs allege, however, that Bethlehem Steel refused to rehire them because it did not wish to incur their pension liability. Union officials attempted to promote the reinstatement of the plaintiffs and other similarly-situated-former employees. Nevertheless, Bethlehem Steel's representatives specifically stated, according to plaintiffs' allegations, that rehiring the former employees would not be cost-effective because of the likely vesting of pensions after breaks in service were removed. Beginning in January 1988, Bethlehem Steel hired workers with no freight-car experience, passing over qualified former employees.
 
 B.
 
 6
 Plaintiffs filed suit under 29 U.S.C. § 1140, on behalf of themselves and 762 similarly-situated individuals, in the Western District of Pennsylvania. In their complaint, plaintiffs claimed that Bethlehem Steel's refusal to rehire them, based on its desire to avoid pension liability, constituted unlawful discrimination under ERISA.
 
 
 7
 Bethlehem Steel filed a motion to dismiss or for summary judgment. The district court granted Bethlehem Steel's motion to dismiss, holding that plaintiffs had no standing to sue under ERISA.[5]
 
 II.
 
 8
 The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.
 
 
 9
 We have plenary review over the district court's dismissal for failure to state a claim upon which relief can be granted. Marshall-Silver Construction Co., Inc. v. Mendel, 894 F.2d 593, 595 (3d Cir.1990). We must take the complaint's allegations as true and construe all facts in plaintiffs' favor. Id.
 
 III.
 
 10
 The parties agree that in order to state a claim under ERISA plaintiffs must be "participants" in the Plan. See 29 U.S.C. § 1132(a)(2). ERISA defines a participant as
 
 
 11
 any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers such employer ...
 
 
 12
 29 U.S.C. § 1002(7). Plaintiffs claim to be "former employees" who "may receive a benefit of any type" from the Plan. No one disputes that plaintiffs are former employees of Bethlehem Steel. This case turns, as the district court correctly noted, on whether plaintiffs "may receive a benefit of any type" from the Plan.[6]
 
 
 13
 In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that:
 
 
 14
 [i]n our view the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," Saldino v. I.L.G.W.U. National Retirement Fund, 754 F.2d 473, 476 (2d Cir.1985), or former employees who "have ... a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits, Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir.) (per curiam ), cert. denied, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986). In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future ... "A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.' " Saldino v. I.L.G.W.U. National Retirement Fund, supra, at 476.
 
 
 15
 489 U.S. at 117-18, 109 S.Ct. at 958. Therefore, plaintiffs are "participants" if they have either a colorable claim to vested benefits in the Plan or a reasonable expectation of returning to employment at Bethlehem Steel. Plaintiffs must allege facts sufficient to establish their status as participants. Sladek v. Bell System Management Pension Plan, 880 F.2d 972, 979 (7th Cir.1989).
 
 A.
 
 16
 Plaintiffs argue that the "rule of parity," read in tandem with a provision of the Internal Revenue Code, 26 U.S.C. § 411(d)(3), creates a colorable claim for vested benefits. The rule of parity is found in § 1053.[7] Among its other provisions, § 1053 sets out the minimum vesting requirements that any plan must meet to comply with ERISA. A plan satisfies the vesting requirements of § 1053 "if an employee who has at least 10 years of service has a [vested][8] right to 100 percent of his accrued benefit" under the Plan. 29 U.S.C. § 1053(a)(2)(A). Section 1053 also contains certain accounting rules that a plan must follow in calculating the years of service that count toward a pension. 29 U.S.C. § 1053(b). The rule of parity, 29 U.S.C. § 1053(b)(3)(D)(i), is one of these accounting rules.
 
 
 17
 The rule of parity provides that an employee will not necessarily sacrifice credited service if rehired after a break in service. Credited service will count toward pension benefits if, on the date of rehire, the employee's years of credited service are longer than the period of layoff, 29 U.S.C. § 1053(b)(3)(D)(i)(II), and the employee works for a full year after rehiring. 29 U.S.C. § 1053(b)(3)(B). If the employee does not fulfill these two conditions, the credited service lapses and the employee has no accrued benefit toward a pension.
 
 
 18
 When Bethlehem Steel began hiring employees for its freight car division, plaintiffs' years of credited service exceeded the duration of their layoff. Therefore, plaintiffs' credited service had not yet been forfeited under the rule of parity. However, neither plaintiffs' credited service preserved by the rule of parity, nor the accrued benefit to which it gives rise is a "vested" benefit under the Plan that would grant participant status under Firestone. A benefit is not vested unless it is unconditional and legally enforceable. See 29 U.S.C. § 1002(19). Under the rule of parity, credited service gives rise to an accrued, forfeitable benefit. Cf. Bouchard v. Crystal Coin Shop, Inc., 843 F.2d 10, 15 (1st Cir.1988) (employer contribution to employee's pension account is a forfeitable benefit) (citing General Counsel Memorandum 39310, Nov. 29, 1984);[9] Herrmann v. E.W. Wylie Corp., 766 F.Supp. 800, 802-03 (D.N.D.1991) (same).
 
 
 19
 Indeed, plaintiffs do not contend the rule of parity, standing alone, confers participant status. Rather, plaintiffs maintain their credited service gives rise to an accrued benefit that will become vested in the event of termination or partial termination of the Plan under 26 U.S.C. § 411(d)(3). Section 411(d)(3) is a requirement that all plans must fulfill to qualify for tax-exempt status, and it provides, in part, that
 
 
 20
 a trust shall not constitute a qualified trust ... unless the plan of which such trust is a part provides that ... upon its termination or partial termination ... the rights of all affected employees to benefits accrued to the date of such termination or partial termination ... are nonforfeitable [i.e., vested].
 
 
 21
 26 U.S.C. § 411(d)(3) (Supp.1992) (emphasis added). Plaintiffs argue that their credited service--which, under the rule of parity is not yet forfeited--gives rise to an accrued benefit which would vest under § 411(d)(3) upon termination of the plan. Plaintiffs maintain that, reading the rule of parity in tandem with section 411(d)(3), they have a colorable claim to vested benefits under Firestone. We disagree.
 
 
 22
 We assume without deciding that plaintiffs are "affected employees" under § 411(d)(3) and, therefore, their accrued benefits could vest upon termination of the Plan. Nevertheless, under the facts of this case, we believe § 411(d)(3) provides no colorable claim for vested benefits under Firestone. The Firestone court explained that a claimant "may become eligible" for benefits if the claimant has "a colorable claim that [ ] he or she will prevail in a suit for benefits." 489 U.S. at 117, 109 S.Ct. at 958. Under their theory, however, plaintiffs could show no likelihood of success in a suit for benefits. Plaintiffs' "claim" is contingent on the future termination of the Plan and is legally unenforceable, even assuming § 411(d)(3) applies to them, until such termination. The Plan never terminated and plaintiffs' credited service gave rise to only a forfeitable benefit. A contingent claim for future benefits does not satisfy the dictates of Firestone. See id.
 
 B.
 
 23
 Plaintiffs could also be "participants" in the Plan, under Firestone, if they had a "reasonable expectation of returning to covered employment." See Firestone, 489 U.S. at 118, 109 S.Ct. at 958. Firestone did not explain the factors that may give rise to a "reasonable" expectation of reemployment. Although other courts of appeals have discussed Firestone, none has defined the factors giving rise to a reasonable expectation of reemployment.
 
 
 24
 Plaintiffs claim they have a reasonable expectation of reemployment because 1) they repeatedly sought reinstatement with Bethlehem Steel, 2) the Union actively negotiated with Bethlehem Steel on their behalf for reinstatement, 3) they were qualified and skilled workers with prior freight-car experience and were in search of such employment when Bethlehem Steel was hiring, 4) they had been released from employment because of an economic downturn, not because of inadequate performance, and 5) Bethlehem Steel ultimately rehired some former employees.[10]
 
 
 25
 Defendants maintain, and the district court held, that plaintiffs had no statutory or contractual right to be rehired and, therefore, had no reasonable expectation of reemployment. Bethlehem Steel had no statutory obligation to rehire plaintiffs and plaintiffs had no right under the collective bargaining agreement to be rehired. Under the collective bargaining agreement, plaintiffs' recall rights expired after five years of layoff.
 
 
 26
 We decline to hold that former employees may never have a "reasonable expectation" of reemployment in the absence of a contractual or statutory entitlement to reemployment. See, e.g., Zydel v. Dresser Industries, Inc., 764 F.Supp. 277, 282-83 (W.D.N.Y.1991) (plaintiffs has reasonable expectation of reemployment in union positions based on ambiguously worded collective bargaining provision, prior practice, and alleged promises). Nevertheless, under the facts of this case--where the collective bargaining agreement expressly covers recall rights, and former employees were not rehired before the expiration of those rights--we believe plaintiffs had no reasonable expectation of reemployment.
 
 
 27
 Collective bargaining agreements and the applicable laws define employee rights. Cf. Graphic Arts Intern. Union v. Haddon Craftsmen, 796 F.2d 692, 696 (3d Cir.1986).[11] In this case, Bethlehem Steel and the Union negotiated and executed a collective bargaining agreement that included certain rights for Bethlehem Steel's employees. Among these was a right of recall, if Bethlehem Steel hired any employee at all, within five years of layoff. Because the collective bargaining agreement specifically addressed recall rights, we hold that plaintiffs had a reasonable expectation only to the rights as defined by the agreement. Plaintiffs' recall rights under the collective bargaining agreement between the Union and Bethlehem Steel expired over two years before Bethlehem Steel began to hire employees in its freight car division. Therefore, plaintiffs had no reasonable expectation of reemployment.
 
 C.
 
 28
 Plaintiffs claim that "but for" Bethlehem's refusal to rehire them, "plaintiffs would have--or at least reasonably could have expected--to return to covered employment and subsequently vest for pensions." Citing Christopher v. Mobil Oil Corp., 950 F.2d 1209 (5th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992), plaintiffs claim to have ERISA standing on this basis.
 
 
 29
 In Christopher, Mobil Oil Corporation maintained a pension plan that included a lump-sum payment option. 950 F.2d at 1212. Under the option, Mobil paid the actuarial equivalent of an employee's pension annuity, discounted by five percent, in a single payment. To be eligible for the option, an employee had to be at least fifty-five years old and have a lump-sum benefit of at least $250,000. Id.
 
 
 30
 Mobil announced that it intended to increase the eligibility threshold for the lump-sum option from $250,000 to $450,000, and that the change, subject to approval by the Internal Revenue Service, would take effect six months after the announcement. In meetings with the IRS, however, Mobil learned that the IRS considered the new eligibility threshold to be discriminatory in favor of highly compensated employees under 26 U.S.C. § 401(a)(4). Because of the IRS's objection, Mobil adopted an amendment that allowed it to waive the eligibility threshold, in its discretion, for valid cause shown. Mobil did not inform employees of the waiver provision. Approximately 1,100 employees elected to rehire in the six-month window and received their lump-sum payment.
 
 
 31
 The employees sued Mobil under § 510 of ERISA, claiming that Mobil constructively discharged them and, thereby interfered with ERISA-protected pension rights. Mobil argued that the employees could not sue under ERISA because they were former employees who had received everything to which they were entitled under the plan. Id. at 1220. The Christopher court disagreed. Recognizing that Firestone did not "reduce the standing question to a straightforward formula applicable to all cases," the court explained:
 
 
 32
 it would seem more logical to say that but for the employer's conduct alleged to be in violation of ERISA, the employee would be a current employee with a reasonable expectation of receiving benefits, and the employer should not be able through its own malfeasance to defeat the employee's standing.
 
 
 33
 Id. at 1221 (emphasis in original). The court also recognized, however, that where the employer's alleged action "was not one that in and of itself divested aggrieved parties of their status as covered employees able to sue," the former employees would have no standing to sue under ERISA. Id. at 1222.
 
 
 34
 Plaintiffs contend that, but for Bethlehem Steel's refusal to rehire them, they would be current employees with a reasonable expectation of receiving benefits. Based on Christopher, plaintiffs maintain they have standing to sue under ERISA. We disagree.
 
 
 35
 The Christopher court specifically held that a former employee had no standing to sue for ERISA benefits unless the employer's action "in and of itself divested aggrieved parties of their status as covered employees." See Christopher, 950 F.2d at 1222. Bethlehem Steel's refusal to rehire them, however, did not "in and of itself" strip plaintiffs of their employee status. See Berger v. Edgewater Steel Co., 911 F.2d 911, 922 (3d Cir.1990) (employee who is constructively discharged need not show a reasonable expectation of returning to covered employment to prove ERISA standing), cert. denied, --- U.S. ----, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); Fischer v. Phila. Elec. Co., No. 90-8020, 1991 WL 36215 (E.D.Pa. March 15, 1991) (employees tricked into retiring because of employer's misrepresentation of plan information have ERISA standing). Plaintiffs were not terminated, constructively discharged, or tricked into retiring from Bethlehem Steel--they were laid off because of an economic downturn in the steel industry. Therefore, even under a "but for" analysis, plaintiffs would lack standing to sue under ERISA.
 
 IV.
 
 36
 We hold that plaintiffs were not participants in an ERISA plan because they had neither a colorable claim to vested benefits nor a reasonable expectation of reemployment. Therefore, we will affirm the judgment of the district court.
 
 
 
 [1]
 The Plan is a defined benefit plan subject to the vesting, funding, and participation requirements of the Internal Revenue Code and ERISA
 
 
 [2]
 After their termination, plaintiffs continued to accrue credit toward their pensions for two years under the terms of the Plan. This provision is commonly referred to as a "creep" provision. See Deeming v. American Standard, Inc., 905 F.2d 1124, 1126 (7th Cir.1990). After the years of continuous service cease to accrue, an employee's "credited service" is equal to the years worked plus two additional years. Plan, p 5.1(b)(4)
 
 
 [3]
 Removal of a break means that the credited service counts towards a pension, not that the period of the layoff also counts. Plan, p 5.1(a)(2). Removal of a break is essentially a bridge, for pension purposes, between reemployment and prior employment
 
 
 [4]
 Plaintiffs allege that, even after their extended layoff, they were qualified for positions in Bethlehem Steel's freight car division. We accept this allegation as true for the purposes of this appeal
 
 
 [5]
 In the alternative, the district court held that § 510 of ERISA does not prohibit discrimination in rehiring. Because we hold that plaintiffs have no standing to sue under ERISA, we do not address the merits of plaintiffs' discrimination claim under § 510
 
 
 [6]
 Plaintiffs also contend that "a minority of the class is composed of former employees who had already acquired the ten years of plan service and who therefore already had a vested right to a pension under the plan when Bethlehem discriminated against them." This is incorrect
 The named plaintiffs brought suit on behalf of themselves and those "similarly situated." However, none of the named plaintiffs had vested at the time they filed suit. When asked at oral argument whether he agreed plaintiffs could not represent a class consisting of vested employees, plaintiffs' counsel conceded "I believe we would have to have a named plaintiff that was representative of the class."
 
 
 [7]
 To be in compliance under ERISA, a plan must include its own "rule of parity" provision. Section 5.1(c) is the Plan's rule of parity. See Plan, p 5.1(c)
 
 
 [8]
 Section 1053 actually uses the term "nonforfeitable," but the terms "nonforfeitable" and "vested" are used interchangeably throughout ERISA. Both signify benefits that are unconditional and legally enforceable. See 29 U.S.C. § 1002(19) (1992); see also Hoover v. Cumberland, MD., Area Teamsters Pension Fund, 756 F.2d 977, 983 n. 14 (3d Cir.), cert. denied, 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985)
 
 
 [9]
 In Bouchard, an employee of Crystal Coin Shop, Robert Bouchard, quit his job approximately fifteen days before the Crystal terminated the pension plan in which Bouchard had been a participant. 843 F.2d at 12. Bouchard asked Crystal to pay him the value of his accrued benefits as of the date of termination, but the plan accountant denied the request. Id. Bouchard sued under ERISA, claiming that his accrued benefits became nonforfeitable upon termination of the plan. The Bouchard court explained that employer contributions to an employee's pension account were forfeitable if the employee had a break in service or if the plan paid the employee the value of his vested benefits. Id. at 16. Like the pension-account contributions in Bouchard, plaintiffs' credited service gives rise to a forfeitable benefit
 
 
 [10]
 Plaintiffs claim, in the alternative, that the factors giving rise to their expectation of reemployment, reasonable or not, raise a question of fact, which cannot be decided on a motion to dismiss. However, under ERISA, standing is a question of law because we must apply ERISA's statutory definition of participant. 29 U.S.C. § 1002(7). Because plaintiffs must allege facts that satisfy a showing of participant status, their allegations of expectation do not raise a factual question
 
 
 [11]
 We explained in Graphic Art that "[u]nder national labor policy, management and organized labor have both contractual rights derived from collective bargaining agreements and statutory rights stemming from public laws...." Id