[No. A061071. First Dist., Div. Three. Jan. 25, 1994.]

AT&T COMMUNICATIONS, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
ROBERT JACK VOAKES, Real Party in Interest.

## COUNSEL

Seyfarth, Shaw, Fairweather & Geraldson, William J. Dritsas and Kathryn K. Morrison for Petitioners.

No appearance for Respondent.

Ivan O. B. Morse for Real Party in Interest.

## OPINION

**WERDEGAR, J.**—We consider whether the Employee Retirement Income Security Act of 1974 (ERISA), 29 United States Code section 1001 et seq.,

preempts an action brought under state law for wrongful termination where an employee was terminated for not returning to work when medically cleared by his employer's physicians.

"ERISA includes a 'virtually unique pre-emption provision' [citation], which provides: 'Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . .' (§ 514(a), as set forth in 29 U.S.C. 1144(a) (preemption clause).)" (*Barnick* v. *Longs Drug Stores, Inc.* (1988) 203 Cal.App.3d 377, 381 [250 Cal.Rptr. 10].) AT&T Communications, Inc. (AT&T) has an ERISA benefit plan that includes health and disability coverage. AT&T directed Robert Jack Voakes to return to work after AT&T doctors determined his nonindustrial disability had ended. Voakes's personal physician advised him he was not ready to return, and he did not. AT&T terminated him.

Voakes sued AT&T for wrongful termination. He asserts he was the target of an unlawful conspiracy by his supervisor and others to terminate his employment; he does not seek disability benefits. AT&T contends, however, Voakes's action relates to the ERISA benefit plan and is preempted. We agree with AT&T. Raising, as it does, the issue of whether Voakes could ignore the benefits decision of AT&T and follow the advice of his own physician, the action directly relates to the benefit plan. The superior court erred in denying AT&T's motion for summary adjudication. We direct issuance of a peremptory writ of mandate.

## FACTS AND PROCEDURES

According to his first amended complaint filed in Alameda County Superior Court, Voakes began his employment with AT&T in 1973. In September 1987, he transferred to the company's Pleasanton, California, facility where Tim Espinoza was his new supervisor. According to Voakes, in late September 1987 Espinoza put a clenched fist to Voakes's chest and verbally threatened him. Shortly afterwards, while in Arizona, Voakes was admitted to the hospital for a kidney stone operation. He was released from the hospital on October 10, 1987, but medical complications followed. His personal physician did not release him to return to work until March 28, 1988. In the meantime, on February 22, 1988, AT&T terminated his employment. Voakes's complaint against AT&T and Espinoza alleged wrongful termination in breach of contract and the covenant of good faith and fair dealing, intentional infliction of emotional distress, and, against Espinoza only, assault and battery.

AT&T sought summary adjudication of the wrongful termination causes of action and to strike part of the emotional distress cause of action on the ground these parts of the complaint were preempted by ERISA. AT&T supported the motion with evidence Voakes was covered by the AT&T sickness and accident disability plan. The plan is administered by AT&T's employee benefit committee, which delegates to the health affairs department the responsibility for evaluating an employee's medical condition.

At first, the health affairs department certified Voakes as disabled and he received benefits under the plan. On February 1, 1988, based on reports by three doctors from AT&T's medical department and by an independent psychiatric consultant, the health affairs department concluded Voakes was able to return to work. On February 5, 1988, AT&T notified Voakes in Arizona he was to report back to work in Pleasanton on February 22, 1988. AT&T extended his disability status to February 8 and provided a paid personal leave of absence from February 9 to February 22. The letter from Espinoza told him the company could not condone any unexcused absences and if he failed to return to work February 22, they would consider he had abandoned his position and would terminate his employment. He failed to return to work on February 22 and was notified of his termination.

On March 21, 1988, the benefit committee reviewed Voakes's claim for additional benefits and approved the health affairs department finding he was not disabled after February 8, 1988. Voakes was informed by letter of the decision and of his right to appeal. He requested his case be resubmitted to the benefit committee because he had been unable to submit additional documentation. The committee granted his request, but Voakes did not submit additional documentation; neither did he appeal the benefit committee's subsequent decision on reconsideration.

In opposing summary adjudication, Voakes presented scant evidence to contradict AT&T's submission. Instead, he primarily disagreed with AT&T about the legal effect of the evidence. He asserted his claim was for breach of the entire employment contract, not the benefit determination by AT&T. He argued a federal court remand order prevented a finding of ERISA preemption and there was a triable issue of material fact whether he refused to return to work or was properly relying upon the medical opinion and conclusions of his own doctors. He presented evidence the United States District Court had remanded the case to state court with a finding the claims were not preempted by ERISA. He "[d]isputed" many of AT&T's statements of undisputed material fact, not because of contradictory evidence, but because he had not yet deposed declarants and he lacked information. His factual submission focused on his deposition, in which he described the cursory examinations conducted by the AT&T doctors.

After hearing, the court denied AT&T's motion, finding: "A triable issue of fact exists and Defendant has not carried the burden on the following issues: [¶] a. Is Plaintiff under the alleged employment contract, and after 15 years of employment under that contract, entitled to further good cause before termination; and [¶] b. Was the fact that the Plaintiff waited for his own doctor to certify his health before returning to work, good cause to terminate his employment." This petition followed.

DISCUSSION

### I. *ERISA Preemption Generally*

■ "ERISA's provisions 'supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.' ERISA § 514(a), 29 U.S.C. § 1144(a). The Supreme Court has consistently emphasized the expansiveness of the 'relate to' standard and its purpose of establishing the regulation of pension plans as an exclusively federal concern. [Citations.] The words 'relate to' are to be given their 'broad common-sense meaning,' [citation], and a state law will be pre-empted 'if it has a connection with or reference to such a plan.' [Citation.]" (*Christopher* v. *Mobil Oil Corp.* (5th Cir. 1992) 950 F.2d 1209, 1217-1218.) "[A] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. [Citations.]" (*Ingersoll-Rand Co.* v. *McClendon* (1990) 498 U.S. 133, 139 [112 L.Ed.2d 474, 484, 111 S.Ct. 478].)

". . . ERISA preemption extends even to state common-law causes of action that 'do not explicitly refer to employee benefit plans.' [Citation.] Thus, many courts have found preemption where the plaintiff's claims, although formed under theories of state common-law, were really ways of restating claims for employee benefits governed by ERISA. [Citations.]" (*Harlan* v. *Sohio Petroleum Co.* (N.D.Cal. 1988) 677 F.Supp. 1021, 1028.) If ERISA claims are pleaded as state law claims, they must be tried under federal law "when stripped of their state law disguises." (*Tingey* v. *Pixley-Richards West, Inc.* (9th Cir. 1992) 953 F.2d 1124, 1130.)

Although the title of ERISA refers to retirement and many provisions govern pension plans, the act covers various employee welfare benefit plans, including health and disability plans. (29 U.S.C. §§ 1002(1) & (3), 1003(a).) Voakes does not claim AT&T's plan is outside ERISA. The only issue is whether Voakes's wrongful termination action "relate[s]" to ERISA for preemption purposes.

### II. *Preemption of Wrongful Termination Actions*

■ Several opinions have discussed ERISA preemption of wrongful termination actions. The usual context is an employee's claim the employer

terminated employment in order to avoid paying pension or health benefits. Such a claim is preempted. (See *Ingersoll-Rand Co.* v. *McClendon, supra,* 498 U.S. 133; *Felton* v. *Unisource Corp.* (9th Cir. 1991) 940 F.2d 503; *Nishimoto* v. *Federman-Bachrach & Associates* (9th Cir. 1990) 903 F.2d 709; *Sorosky* v. *Burroughs Corp.* (9th Cir. 1987) 826 F.2d 794.) However, where the employee alleges mixed motives for termination, some of which do not relate to ERISA benefits, the unrelated portions of the complaint will not be preempted. An employee may pursue state wrongful termination claims if they are unrelated to ERISA. (See *Tingey* v. *Pixley-Richards West, Inc., supra,* 953 F.2d at p. 1131; *Schlenz* v. *United Airlines, Inc.* (N.D.Cal. 1988) 678 F.Supp. 230, 235.)

Preemption depends upon the factual basis for the complaint, not whether the complaint on its face states a cause of action under ERISA. If ERISA authorizes an employee's civil action to enforce the same rights, a state law action to do so is preempted. (*Felton* v. *Unisource Corp., supra,* 940 F.2d at pp. 507-508.)

*Sorosky* v. *Burroughs Corp., supra,* 826 F.2d 794 and *Barnick* v. *Longs Drug Stores, Inc., supra,* 203 Cal.App.3d 377, following *Sorosky's* example, demonstrate the fine line courts must walk in determining whether wrongful termination actions are preempted. Sorosky's employer laid him off when it closed a major portion of its Santa Barbara facility. He brought an action for breach of contract/wrongful discharge, alleging several different theories. Some of the allegations related to the company's retirement benefit plan. The *Sorosky* court held these allegations were preempted. Other allegations, such as Sorosky's claim of discharge without good cause, had no relationship to the benefit plan. The court held these were not preempted. (*Sorosky* v. *Burroughs Corp., supra,* 826 F.2d at pp. 798, 800.) Claims for age discrimination were not preempted, but the court found Sorosky's evidence insufficient to raise a triable age-discrimination issue. (*Id.* at pp. 800, 803-804.)

In *Barnick* v. *Longs Drug Stores, Inc., supra,* 203 Cal.App.3d 377, Barnick alleged Longs fired him without cause. In a deposition and in answers to interrogatories, Barnick then contended Longs fired him to prevent his ERISA plan benefits from vesting. Longs countered with a motion for summary judgment on federal preemption grounds. (*Id.* at p. 379.) The *Barnick* court examined each of the five causes of action. Although each repeated general allegations about the existence of an ERISA plan, the court concluded some of the theories upon which Barnick relied had no relationship to the plan. Those portions of the complaint alleging violation of employment policies unrelated to the ERISA plan and termination for refusing to violate state statutes were not preempted. (*Id.* at p. 383.)

### III. *The Federal District Court's Remand Order*

On October 28, 1988, shortly after Voakes filed his complaint, AT&T removed the matter to federal court. On May 31, 1989, Judge Alfonso J. Zirpoli remanded the case with a five-page explanation why it was not preempted by ERISA. Without mentioning the doctrine of law of the case, Voakes asserts here that the ERISA preemption question has previously been decided in his favor, implying that this court may not revisit the issue.

Several obstacles prevent Voakes from relying upon Judge Zirpoli's decision as law of the case: (1) the doctrine of law of the case applies only to appellate court decisions (*Provience* v. *Valley Clerks Trust Fund* (1984) 163 Cal.App.3d 249, 256 [209 Cal.Rptr. 276]); (2) a remand ruling is a jurisdictional ruling, not a final judgment on the merits of the preemption defense (*Whitman* v. *Raley's Inc.* (9th Cir. 1989) 886 F.2d 1177, 1181); (3) law of the case does not apply if intervening decisions have clarified or altered controlling rules of law, as have recent decisions emphasizing the expansive breadth of ERISA preemption (*Provience* v. *Valley Clerks Trust Fund, supra,* at p. 256); and (4) the federal court ruling was based on the pleadings, not upon the factual presentation at the summary adjudication stage.

Although Judge Zirpoli's decision does not dictate the result here, we pause to consider whether its reasoning should be applied to the evidence presented at the summary adjudication stage. Judge Zirpoli's position was: (1) Voakes's complaint addressed breach of an employment contract, including a provision not to terminate him because of injury or medical leave; (2) the complaint did not allege Voakes was terminated for exercising his rights under the ERISA plan or in order to prevent him from exercising those rights; (3) the complaint did not allege that sickness and accident disability leave policies were contained in the ERISA plan; and (4) even if AT&T's sickness and accident disability policies were contained in an ERISA plan, the agreement not to terminate was not part of the ERISA plan.

Judge Zirpoli's remand was based on the allegations of the complaint. He seems to have concluded the matter was not preempted because the complaint did not directly allege violation of ERISA, or an ERISA benefits contract, or interference with rights under ERISA. The first amended complaint alleged only that Voakes "at all times conformed with Defendant AT&T's company policies concerning sickness and accident disability leave," that he was under a doctor's direction not to resume work until March 28, 1988, and that in or about February 1988, while under a doctor's

care, AT&T informed him he was to be terminated. Unless the original complaint—which was before Judge Zirpoli, but has not been furnished to us—provided more detail, it did not reveal to Judge Zirpoli that Voakes directly challenged the authority of AT&T's doctors to determine when he was fit to return to work; rather, it implied that the only doctor Voakes had seen had not released him for work when the company terminated him. Neither did the complaint acknowledge Voakes's failure to follow ERISA plan appeal procedures to resolve his dispute with AT&T over the end of his disability. Because the evidence presented at the summary adjudication stage described a much different case from that presented to Judge Zirpoli, his ruling is not persuasive here.

## IV. *Application of the Law to This Case*

■ Under the decisional law described in parts I and II above, any portions of Voakes's complaint that relate to ERISA are preempted. To determine the issue, we examine the complaint, the evidence presented below, and Voakes's arguments to this court. Read in light of the evidence presented in connection with the summary adjudication motion, the complaint shows a direct relationship to the ERISA health and disability plan.

### A. *The Complaint*

General allegations common to each cause of action allege AT&T terminated Voakes while he was under a doctor's direction not to return to work and while he was conforming to all AT&T's policies concerning sickness and accident disability. By implication, the allegations suggest AT&T violated its own sickness and accident disability policies by terminating Voakes. Even without the general allegations, the causes of action for breach of contract and for breach of the covenant of good faith and fair dealing relate to ERISA. Their primary allegation is breach of an agreement to employ Voakes as long as his performance was satisfactory. However, they also allege (1) the contract provided AT&T would adhere to company policies concerning medical and disability leave, and (2) AT&T breached the covenant of good faith and fair dealing by terminating Voakes because he was unable to return to work after medical complications.

### B. *Evidence in Superior Court*

The evidence submitted in connection with the summary adjudication motion shows the breach of contract and breach of the covenant of good faith and fair dealing causes of action hinge on Voakes's theory he could rely on his own physician's determination of when he would be fit to return

to work, and AT&T could not terminate him for contravening the health affairs department's different conclusion. Although Voakes does not frame them this way, the two central questions in his lawsuit are (1) what are the procedures for challenging an ERISA benefits decision on the termination of disability, and (2) what are the consequences of resisting the benefits decision without going through the established procedures for challenging the decision. These two questions directly involve the ERISA benefit plan.

Even Voakes's arguments to the superior court demonstrate the close connection between his causes of action and the ERISA benefit plan. Voakes claimed below there was "a triable issue of material fact whether Plaintiff actually refused to return to work or whether he was properly relying upon the medical opinions and conclusions of his own doctors . . . and therefore allowed to remain on medical disability until Plaintiff was properly cleared to return to work by his own physician. . . ." Consequently, given the presentation before it, the superior court had no basis for denying summary adjudication.

## C. *Voakes's Arguments*

Voakes seeks to sever the connection with ERISA by asserting in this court for the first time that on October 5, 1987, Espinoza "formed a group" to determine how to terminate Voakes's employment. He does not disclose Espinoza's reason for conspiring, the details of the conspiracy, or how Espinoza planned to accomplish his objectives. Because Voakes failed to raise the issue of conspiracy below in his opposition to summary adjudication, these asserted facts cannot be used to support the superior court's ruling.

Even, moreover, were we to consider these assertions, we would reach the same result. To the extent Voakes relies on conspiracy, he impliedly paints the AT&T doctors as coconspirators and again confronts preemption by challenging the integrity of the health benefit plan.[1]

---

[1]Voakes challenges the plan's integrity without having followed the plan's administrative procedures. Under the plan, an employee whose claim is denied by the benefit committee may seek review from the review committee. Voakes abandoned administrative review procedures by failing to submit further documentation after the benefit committee granted his request to do so and by never seeking review by the review committee.

Had Voakes followed these appeal channels, he would have either succeeded, and perhaps exposed the conspiracy, or failed, providing grounds for suspecting that the claimed conspiracy infected the health affairs department, benefit committee and review committee as well. Having exhausted the administrative remedies, Voakes would have been well positioned to seek a remedy under ERISA with a claim AT&T employees conspired to use the ERISA plan procedures to terminate him.

Voakes also claims exemption from ERISA preemption because he does not seek reimbursement for wrongfully denied disability benefits and, further, the amount of lost benefits was inconsequential. He contrasts his case with those cited by AT&T in which the litigants seek to reinstate retirement benefits. This case admittedly falls into none of the familiar patterns. The determinative factor on preemption, however, is not whether Voakes seeks benefits, but what facts led to his termination. As we have explained, the facts here are intimately tied to the ERISA plan.

Finally, Voakes focuses on procedures leading to his termination. He points out that management, not the benefit committee, terminated him, and he contends AT&T did not follow company procedures for solving its personnel problem. He asserts that temporary illness or disability is not a ground for termination. He claims AT&T policies allow a person with 15 years' service to stay off work for up to 54 weeks.

These arguments only reinforce our decision that ERISA preempts Voakes's causes of action. They return us to the central questions: (1) what are the procedures for challenging a disability decision, and (2) could AT&T, over Voakes's resistance, enforce its decision he was no longer disabled. Espinoza sought to enforce AT&T's benefits decision. Voakes resisted. The rights of the parties cannot be determined without examining plan procedures and the enforceability of AT&T's benefits decision.

Our decision is fortified by the recent Ninth Circuit opinion in *Spain* v. *Aetna Life Insurance Company* (9th Cir. 1993) 11 F.3d 129. The plaintiffs there sought wrongful death damages because the decedent's employer improperly delayed authorizing the final part of a three-part bone marrow transplant. The plaintiffs did not seek benefits under the plan, but damages flowing from an erroneous decision under the plan. The *Spain* court nevertheless sustained a trial court ruling finding ERISA preemption.

Voakes's position here is analogous. He does not seek benefits under the plan, but compensation for a consequence of the allegedly erroneous decision—i.e., termination of his employment. As in *Spain*, his action directly relates to administration of the plan.

## V. *Conclusion*

Voakes has not successfully severed the connection to ERISA. His wrongful termination action depends upon his underlying theory that he could rely upon his own physician's advice about when to return to work and therefore upon his continuing disability. The court erred in rejecting AT&T's contentions that the causes of action for breach of contract and breach of the

covenant of good faith and fair dealing were preempted. We do not decide whether the court should have stricken parts of the emotional distress cause of action, because the parties have not directly addressed the particular allegations AT&T sought to have stricken.[2]

## DISPOSITION

Let a peremptory writ of mandate issue directing the Alameda County Superior Court to vacate its order denying the motion for summary adjudication and to enter a new order granting the motion.

White, P. J., and Merrill, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied April 21, 1994. Lucas, C. J., did not participate therein.

---

[2]We express no opinion about whether, if requested, the superior court should permit Voakes to amend his complaint to state a claim for ERISA remedies. (See *Commercial Life Ins. Co.* v. *Superior Court* (1988) 47 Cal.3d 473, 485 [253 Cal.Rptr. 682, 764 P.2d 1059].)