Filed 11/15/21 Shadkor v. Volwood Management CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SHADKOR, INC., <br><br>　　Plaintiff and Respondent, <br><br>　　v. <br><br>VOLWOOD MANAGEMENT COMPANY, L.P., et al., <br><br>　　Defendants and Appellants. | B305950 <br><br> (Los Angeles County <br> Super. Ct. No. BC643470) |

APPEAL from judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge. Affirmed and remanded for determination of attorneys' fees on appeal.

Hamrick & Evans, A. Raymond Hamrick, III, Jonathan Dutton, and Adam Koslin for Plaintiff and Respondent.

Cozen O'Connor, Frank Gooch III and Matthew E. Lewitz for Defendants and Appellants.

## INTRODUCTION

This appeal arises out of a dispute between Shadkor, Inc., dba Milt and Edie's Master Dry Cleaners (Shadkor) on the one hand, and Volwood Management Company, L.P. (Volwood) and Pass Avenue Partnership (PAP) (collectively, the Landlords) on the other, over the terms of a commercial lease.[1] After a jury trial during which Shadkor and the Landlords presented conflicting testimony regarding their intentions when they negotiated the lease and amendments to it, the jury found in favor of Shadkor on its breach of contract claims.[2]

On appeal, the Landlords contend: (1) the trial court erred by permitting the jury to decide issues the court previously determined as a matter of law in connection with Shadkor's motion for summary adjudication; and (2) the trial court abused its discretion by denying the Landlords' motion to bifurcate the trial. We reject both contentions and affirm. We also find the lease agreement between the parties entitles Shadkor to an award of attorneys' fees on appeal, and remand to the trial court to calculate the amount of those fees.

## FACTUAL AND PROCEDURAL BACKGROUND

Shadkor is a family-owned laundry and dry-cleaning business. Since 1988, Shadkor has conducted its business on property it owns at the corner of North Pass Avenue and West Alameda Avenue in Burbank.

In 1995, Shadkor rented corporate office space in a building owned by PAP, located north of, and directly adjacent to,

---

[1] Jack Vollstedt (along with his two sons) are the principals of Volwood. Jack Vollstedt also is one of the principals of PAP.

[2] Shadkor also sued Patricia Anderson, Jack Vollstedt's sister. She was the Landlords' leasing agent at all times relevant to this action, and a 49 percent owner of PAP. She is not a party to this appeal.

Shadkor's dry-cleaning business. Under the terms of the lease, Shadkor received five customer parking spaces.

In 2005, Shadkor relocated its corporate office from the building owned by PAP to a building owned by Volwood, located next door and to the east of Shadkor. In connection with the relocation, Shadkor and Volwood entered into a new lease (the Lease). Article 3 of the Lease stated: "The term of this Lease shall be seventy-two (72) months and shall commence on October 1, 2005 ('Commencement Date') and terminate on September 30, 2011." Article 57 of the Lease provided Shadkor with two successive five-year options to extend the term of the Lease. To exercise the option, Shadkor was to "give written notice to Landlord of its intention to exercise said option at least four (4) months prior to the end of the initial term of this Lease." The Lease also included ten parking spaces for the term of the Lease "for customer parking of [Shadkor]" (the Customer Parking Spaces). The Customer Parking Spaces consisted of the five parking spaces Shadkor received under the terms of the lease it signed with PAP in 1995, and an additional five spaces, for a total of ten spaces.[3]

In 2007, Volwood and Shadkor entered into a First Amendment to the Lease (the First Amendment), which deleted and/or modified certain provisions of the Lease. The First Amendment did not, however, delete the "Option to Extend" provision contained in Article 57 of the Lease. Paragraph 4 of the First Amendment states: "Except as expressly modified hereby, all terms and conditions of the Original Lease shall remain in full force and effect."

On August 30, 2011, Volwood and Shadkor entered into a Second Amendment to the Lease (the Second Amendment). Pursuant the Second Amendment, the parties agreed to "further

---

3    Although Shadkor moved its corporate office to the building owned by Volwood, the Customer Parking Spaces remained in the building owned by PAP.

modify, change and alter the Original Lease." As relevant here, Paragraph 1 of the Second Amendment states the parties mutually agree to "add to the existing language of Article 3. 'TERM' as follows: Tenant is extending the term of the Original Lease, as amended, for an additional seventy-two (72) months commencing October 1, 2011 and terminating September 30, 2017." In the Second Amendment, the parties also agreed to delete and/or modify other terms in the Lease including the "base rent," "rent redetermination: annual adjustment of rent," "increase in taxes," and "operating expenses." Like the First Amendment, paragraph 6 of the Second Amendment similarly states: "Except as expressly modified hereby all terms and conditions of the Original Lease and any Amendments shall remain in full force and effect."

On September 16, 2016, Shadkor provided Volwood with written notice that it was exercising its first option to extend the term of the Lease for a period of five years (or until September 30, 2022).

On October 3, 2016, Volwood provided Shadkor with written notice of its intention to "relocat[] [Shadkor's] (10) customer parking spaces [in the building owned by PAP] . . . to (10) un-reserved parking spaces at [the building owned by Volwood, located approximately 230 feet away from the entrance of the dry cleaners.] Later that month, Volwood provided Shadkor with a notice of termination of tenancy and demand for payment of unpaid rent. The notice stated the Lease expired on September 30, 2017 under the terms of the Second Amendment. The notice made no mention of Shadkor's September 16, 2016 notice to exercise its first option.

After receiving the notices from the Landlords, Shadkor filed a complaint against the Landlords asserting twelve causes of action, including breach of contract, breach of implied contract, and fraud. The complaint also sought injunctive relief and declaratory relief. Shadkor alleged the Landlords breached the

4

Lease by "unilaterally announcing that it would, on December 31, 2016, and despite [Shadkor's] contractual expectation and justifiable reliance on [Landlords'] promises, revoke the [Customer Parking Spaces] and substitute them for ten (10) unreserved tandem parking spaces located approximately 230 feet away from the entrance of Milt & Edie's Dry Cleaners . . . which do not provide customers . . . with efficient and convenient ingress and egress from the premises."

In response, the Landlords filed an answer and a cross-complaint for breach of contract, anticipatory breach of contract, declaratory relief, and injunctive relief. The Landlords sought declaratory relief regarding the expiration of the Lease. They alleged the initial term of the Lease expired on September 30, 2011; thus, under Article 57 of the Lease, notice of Shadkor's intention to exercise its first five-year option was to be given no later than May 31, 2011. Because Shadkor did not give notice of its intention to exercise its option until September 16, 2016, the Landlords alleged Shadkor failed to timely exercise its option, and the Lease expired on September 30, 2017.

Shadkor filed a motion for summary adjudication on the Landlords' causes of action in their cross-complaint for anticipatory breach of contract and declaratory relief. Shadkor asserted that, based on the plain language of the Lease and the Second Amendment, Shadkor's September 16, 2016 notice of its intention to exercise its option was "timely and valid as a matter of law." According to Shadkor, the Second Amendment extended the initial term of the Lease to September 30, 2017; thus, Shadkor had until May 31, 2017 to give written notice to exercise the option (i.e. "four (4) months prior to the end of the initial term of this Lease" per Article 57 of the Lease). In opposition, the Landlords submitted the declaration of Patricia Anderson. She declared that in her conversations with Milton Chortkoff (principal shareholder of Shadkor) regarding the Second Amendment, "there was never any mention, conversation, or

5

discussion of the option rights under the [Lease] which had already lapsed. There was no attempt to extend, revise, restore, or reset the Option to Extend." The trial court denied Shadkor's motion in its entirety, finding "[t]riable issues of material fact exist . . . ."

At trial, the parties offered conflicting testimony of the parties' intentions, when they negotiated the Second Amendment, regarding the two five-year options to extend in Article 57 of the Lease. For example, Ms. Anderson testified she never discussed the options to extend the term of the Lease with Shadkor's representatives before the parties signed the Second Amendment. One of Shadkor's representatives (Michael Shader), however, testified that in early 2011, he and Ms. Anderson discussed that the Lease would be extended for six years, and Shadkor's Customer Parking Spaces and two-five year options would not be affected and would be "all part of [the extension]."

The jury returned a verdict in favor of Shadkor on its breach of contract claims.[4] It found the Lease "grant[ed] [Shadkor] the use of 10 parking spaces for Milt & Edie's customers on the Pass Avenue parking lot," and Volwood breached the Lease "by giving written notice to [Shadkor] of its intention to terminate [Shadkor's] right to use the 10 [Customer Parking Spaces]." The jury found Shadkor was harmed by Volwood's breach, and awarded Shadkor $3,750. It also found the "Second Amendment to the [ ] Lease include[d] two five-year options that [Shadkor] could exercise in the future to extend the [ ] Lease." Shadkor, therefore, "timely exercise[d] its first five-year option by sending its September 16, 2016 written notice to exercise option to [the Landlords]" and Volwood breached the Second Amendment "by declaring to terminate the [Lease] [ ] as of September 30, 2017."

---

4      Because Shadkor prevailed on its claims based on the contract, the special verdict form instructed the jury to skip Shadkor's alternative claims.

The trial court entered judgment in favor of Shadkor and against the Landlords. It also dismissed the Landlords' operative cross-complaint with prejudice.

The Landlords appeal from the judgment.

## DISCUSSION

### A. The Trial Court Did Not Err by Allowing the Jury to Interpret the Terms of the Lease, and the Second Amendment to the Lease, Based on Conflicting Extrinsic Evidence

#### 1. *Standard of Review and Governing Principles*

"The interpretation of a contract is a judicial function. [Citation.]." (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432 (Goldstein).) "'The court generally may not consider extrinsic evidence of any prior agreement or contemporaneous oral agreement to vary or contradict the clear and unambiguous terms of a written, integrated contract. [Citations.] Extrinsic evidence is admissible, however, to interpret an agreement when a material term is ambiguous. [Citations.]' [Citations.]" (*Ibid*.)

"'The interpretation of a contract involves "a two-step process: 'First the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine "ambiguity," i.e., whether the language is "reasonably susceptible" to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is "reasonably susceptible" to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract. . . . ' [Citation.]" [Citation.]'" [Citations.]" (*Goldstein, supra*, 34 Cal.App.5th at pp. 432-433.)

"'When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. [Citations.] . . . . If, however, there is a conflict in the extrinsic evidence, the factual conflict is to be resolved by the

7

jury. [Citations.]' [Citations.]" (*Goldstein, supra*, 34 Cal.App.5th at p. 433.)

"On appeal, a 'trial court's ruling on the threshold determination of "ambiguity" (i.e., whether the proffered evidence is relevant to prove a meaning to which the language is reasonably susceptible) is a question of law, not of fact. [Citation.] Thus[,] the threshold determination of ambiguity is subject to independent review. [Citation.]' [Citation.]" (*Goldstein, supra*, 34 Cal.App.5th at p. 433.)

### 2. *Analysis*

The Landlords contend the trial court erred by allowing the jury to determine whether Shadkor timely exercised its option to extend the Lease. They argue the trial court, in denying Shadkor's motion for summary adjudication, determined as a matter of law that the option had not been properly exercised. It follows, according to the Landlords, that the jury improperly opined on an issue of law. We disagree.

As discussed above, the trial court denied Shadkor's motion for summary adjudication, reasoning:

> "Triable issues of material fact exist, including but not limited to:
>
> "a)     whether the option to extend that was contained in the original lease lapsed due to moving cross-defendant's failure to give notice that it was exercising the option at least 4 months' [sic] prior to the end of the initial lease term – [¶] Per [p]ara[graph] 57 of the original Lease, notice of exercising the option to extend the lease term had to be given at least 4 months before the lease terminated. As the original lease terminated on 9/30/2011, the notice had to be given by 5/30/2011. In

fact, no notice was given by that date, and therefore the option lapsed. [Citation.] [¶] Per para[graph] 58(b) of the original lease, no later option could be exercised unless the prior option to extend or renew had been exercised. [¶] Therefore, as of May 31, 2011, the option lapsed and any attempt to exercise a future option would be a nullity.

"b)    whether, by extending the original lease terms in the 'Second Amendment' (executed o/a 9/1/2011), the original option was somehow revived – [¶] Moving cross-defendant posits that, by executing the Second Amendment . . ., the parties intended to revive the lapsed option because the parties were effectively 'extending' the initial term of the lease, such that [the] parties' original agreement should be read to allow notice of exercising the option to be given anytime up until 4 months before the extended termination date of 9/30/217. [¶] That argument, however, assumes that the option hadn't already lapsed. Since it HAD lapsed, it could not be 'revived,' particularly in view of the language of para[graph] 58(d), pursuant to which the tenant lost any right to exercise a future option by failing to give notice of exercising the option in the original lease by 5/30/2011.

"[This is not a case where the language of the parties' agreement has 'uncertainty,' such that the uncertainty should be interpreted in favor the tenant.]"

Although not a model of clarity, the trial court's order denying Shadkor's motion for summary adjudication could not, as

9

the Landlords contend, establish as a matter of law that Shadkor failed to timely exercise its option to extend the Lease. Rather, an order denying a motion for summary adjudication "simply establishes the existence of a triable issue of fact. It does not decide the issue. [Citation.]" (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1009 (*Transport*); see also *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1086 ["Denial of a motion for summary judgment does not establish any fact or resolve any issue; it merely determines that the issues will be decided later, at the time of trial."].)

We likewise reject the Landlords' contention that the trial court's findings in its order denying Shadkor's motion for summary adjudication became the law of the case and therefore, the issue of whether Shadkor's option to extend the Lease lapsed should not have been submitted to the jury. ~(AOB30)~ This argument is premised on the erroneous claim that the trial court could conclusively determine an issue in denying a motion for summary adjudication. (See *Transport, supra,* 202 Cal.App.4th at p. 1009.) And, in any event, the law of the case doctrine does not apply to trial court rulings. (See *Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 787 ["'The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal [ ]'" [citation.]"]; see also *AT&T Communications, Inc. v. Superior Court* (1994) 21 Cal.App.4th 1673, 1680 ["the doctrine of law of the case applies only to appellate court decisions [citation].".)

Had the Landlords brought their own cross-motion for summary judgment or adjudication, the trial court could have decided the issue as a matter of law if it determined no triable issues of material fact existed. (Cal. Civ. Proc. § 437c, subd. (c).)

10

The Landlords failed to do so, however. Instead, in support of their opposition to Shadkor's motion, the Landlords submitted extrinsic evidence of the parties' intent. As discussed above, Patricia Anderson declared that during her negotiations of the Second Amendment with Chortkoff, "there was never any mention, conversation, or discussion of the option rights under the [Lease] which had already lapsed. There was no attempt to extend, revise, restore, or reset the Option to Extend." She further declared that the Second Amendment created "an extended term" as opposed to modifying the "initial lease term," and therefore the option expired four months prior to September 30, 2011. Based on the parties' conflicting interpretations of the Lease and the Second Amendment, the trial court denied Shadkor's motion for summary adjudication, and properly permitted the jury to resolve what it concluded were the "[t]riable issues of material fact."

The Landlords alternatively contend that because the Lease was an integrated agreement (i.e. a final written agreement), the trial court erred by admitting parol evidence at trial. There are two problems with this argument. First, the Landlords failed to object to the admission of extrinsic evidence at trial. Thus, they have forfeited the issue. (Evid. Code, § 353, subd. (a).) Second, "even in an integrated contract, extrinsic evidence can be admitted to explain the meaning of the contractual language at issue . . . ." (*Hot Rods, LLC v. Northrop Grumman Systems Corp*. (2015) 242 Cal.App.4th 1166, 1175; see also *WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710 ["Parol or extrinsic evidence is admissible to resolve an ambiguity. [citations.]"])

Here, although unclear from the order denying Shadkor's motion for summary adjudication, the record demonstrates the trial court ultimately determined certain terms of the Lease and the Second Amendment were ambiguous. Specifically, when the parties were discussing jury instructions, the trial court stated:

11

"I've made the decision that there are – . . . uncertainties in this contract, and that's why we're in trial, and that's why the jury has to decide these things. If there were no extrinsic evidence, this would be my case. It wouldn't be a jury case. It's only because there's extrinsic evidence bearing upon the interpretation of the contract that you get a jury at all." The trial court, therefore, provided the jury with CACI No. 314 (to which the Landlords did not object), stating in part: "Shadkor and Volwood . . . dispute the meaning of the words contained in the Second Amendment to the . . . Lease. [¶] In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract." Because the trial court found the terms of the contract were ambiguous, it correctly delegated to the jury the issue of what the parties intended the language of the Lease and the Second Amendment to mean, based on the parties' conflicting extrinsic evidence. (See e.g. *City of Hope National Medical Center v. Genentech, Inc*. (2008) 43 Cal.4th 375, 395 ["when, as here, ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination and the interpretation of the contract are questions of fact that may properly be resolved by the jury [citation.]"].)

We note the Landlords belatedly argue the trial court erred by concluding the terms of the Lease were ambiguous. The Landlords forfeited this argument, however, by failing to raise it until their appellate reply brief. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1050 [where appellant fails to raise an argument "until its appellate reply brief," it "has forfeited the argument. [citation.]"] In any event, we reject the contention on the merits. The terms of the Lease and Second Amendment are "'reasonably susceptible'"

12

to the interpretation urged by Shadkor (i.e. the Second Amendment extended the "initial term," and thus, Shadkor's September 16, 2016 notice of its option to extend was timely because Shadkor sent it more than four months before the end of the extended initial term). (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 ["If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in . . . interpreting the contract. [citation.]"].)

Accordingly, we conclude the interpretation of the Lease and the Second Amendment, based on the parties' conflicting extrinsic evidence, was properly resolved by the jury.

## B. The Trial Court Did Not Abuse Its Discretion by Denying the Landlords' Motion to Bifurcate the Trial

In a variation of the arguments above, the Landlords contend the trial court abused its discretion by denying their motion to bifurcate the trial "and permitting an issue of contract interpretation to be determined by the jury after the [c]ourt had previously determined that the [o]ption had not been properly exercised." We reject this argument for the same reasons discussed above in section A.2 of this opinion. Because the Landlords proffer no additional arguments in support of this contention, we discern no abuse of discretion.

## C. Shadkor Is Awarded Its Attorneys' Fees on Appeal

Article 30 of the Lease states: "In the event of any action or proceeding brought by either party against the other under this Lease, the prevailing party shall be entitled to recover for its costs, and the fees and expenses of its attorneys in such action or proceeding such amount as the Court may adjudge reasonable." Shadkor requests attorneys' fees reasonably incurred on appeal. We agree it is entitled to those fees, in an amount to be determined by the trial court. (See *Serrano v. Unruh* (1982) 32

13

Cal.3d 621, 637 ["it is established that fees, if recoverable at all – pursuant either to statute or parties' agreement – are available for services at trial and on appeal. [citations.]"].)

## DISPOSITION

The judgment is affirmed. Shadkor is awarded its costs and attorneys' fees on appeal. The matter is remanded to the trial court for its determination of the amount of an award of costs and attorneys' fees on appeal to Shadkor, and entry of an order awarding those costs and fees.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.